[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Nov. 18, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-16597
Non-Argument Calendar

_____

D. C. Docket No. 08-00838-CV-RDP

JOHN HENRY HUNTER,

Petitioner-Appellant,

versus

JERRY FERRELL,
Warden,
ATTORNEY GENERAL OF THE STATE OF ALABAMA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 18, 2009)

Before HULL, WILSON and FAY, Circuit Judges.

PER CURIAM:

John Henry Hunter, an Alabama state prisoner, appeals the district court's

denial of his pro se federal habeas corpus petition, brought under 28 U.S.C. § 2254,

as barred by the one-year statute of limitations of the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214

(1996). After review, we vacate the district court's order and remand for further

proceedings consistent with this opinion.

## I.    Underlying State Proceedings

In Alabama state court in 1995, Hunter was charged with, inter alia, murder,

first degree armed robbery and burglary, and second degree robbery. Hunter

initially pled not guilty.

### A.    Competency Evaluation in 1997

In April 1997, Dr. Laurence R. Maier, a licensed psychologist and forensic

examiner, conducted a court-ordered assessment to determine Hunter's

competency to stand trial and his mental state at the time of the charged offenses.

Dr. Maier's report concluded that Hunter, though mentally retarded, had "minimal

capacity to meet competency requirements" to stand trial and understood the

difference between right and wrong at the time of the offenses.

According to Dr. Maier's competency report, Hunter is unable to read or

write anything other than his name and received special education services for the

2

eight or nine years of his formal education. In 1995, Hunter was given the Wechsler Adult Intelligence Scale-R that indicated he had a Verbal IQ of 57, a Performance IQ of 59 and a Full Scale IQ of 59. Dr. Maier described these scores as "appreciably low, all falling at the 1st Percentile." Dr. Maier's report states, "Thus, 99 out of a hundred other people Mr. Hunter's age would obtain higher IQ scores on the same instrument." Dr. Maier also noted that Hunter's full scale score of 59 "falls at the lower-end of the Mildly Mentally Retarded range."

Dr. Maier found the scores "consistent with [Hunter's] overall intellectual presentation" during the assessment and stated that Hunter's "intellectual slowness is obvious to anyone who talks to him for more than a few moments." Dr. Maier also admitted he had some difficulties during the assessment "due to defendant's Mental Retardation and to a severe expressive speech disorder, present since birth." The speech disorder, which Dr. Maier described as "expressive speech aphasia," caused Hunter to have "extensive slurring, sound omissions, incomplete sentence structure, and some stammering." Dr. Maier noted that when Hunter was emotional, he became "completely nonunderstandable."

As for Hunter's mental retardation, Dr. Maier stated that Hunter's judgment and insight were "moderately to severely impaired" and that "his problem-solving skills overall are quite limited." Based on clinical impressions, Dr. Maier

3

diagnosed Hunter with, inter alia, "Mental Retardation, Degree Mild, Chronic, Irreversible." Dr. Maier opined that this condition "has apparently been present lifelong and been accompanied by very poor overall performance personally, vocationally, educationally, and obviously in a social sense as well." Dr. Maier stated that Hunter was "not able to function independently in society" and needed to be in a structured environment where "his limited problem-solving skills will allow for needed maintenance and care from others."

Although Dr. Maier concluded that Hunter was competent to stand trial, he described Hunter's understanding of the nature and object of the court proceedings as "simplistic" and noted significant impairments in Hunter's understanding. For example, Dr. Maier rated Hunter's "appraisal of available legal defenses," "capacity to disclose to his attorney pertinent facts," "ability to meaningfully participate in the planning of legal strategies," and "capacity to testify relevantly overall" as "moderately impaired." Although Dr. Maier found these impairments to be "fairly significant," he also thought they could "be overcome and managed by court patience and attorney explanation and education." Dr. Maier stated that his "biggest area of concern" was Hunter's "ability to assist his attorney in his own defense" because of his poor communication skills. Dr. Maier concluded that Hunter was "borderline in his overall competency." Although normally someone

4

with Hunter's degree of mental retardation "would probably not have sufficient understanding," Dr. Maier opined that, because Hunter had prior experience with the criminal justice system, "with adequate representation and education, [Hunter] can factually and rationally understand the charge and participate to an adequate degree with his attorney in his own defense." Dr. Maier concluded, however, that Hunter "will not be an easy man to legally represent."

## B. Guilty Plea and Sentence in 1999

At some point, Hunter changed his plea to guilty. On January 28, 1999, without conducting a competency hearing, the state court accepted Hunter's guilty plea. The state court imposed a 40-year sentence on the murder conviction and concurrent 20- and 10-year sentences, respectively, on the first degree armed robbery and burglary and second degree robbery convictions. Hunter did not appeal his convictions, which became final on March 11, 1999, when the time for filing a direct appeal expired.

## II. Three State Collateral Proceedings in 2004 to 2008

During 2004 to 2008, Hunter filed pro se three state post-conviction petitions. Hunter filed these petitions through the assistance of prison law clerks, he says, because he "could not manage his affairs or understand his legal rights and act upon them." On November 9, 2004, Hunter filed his first state post-conviction

petition pursuant to Alabama Rule of Criminal Procedure 32. The state court granted the petition as to one claim and denied the petition as to two other claims.[1] On June 10, 2005, the Alabama Court of Criminal Appeals affirmed.

On November 21, 2005, Hunter filed a second Rule 32 petition in state court. The second petition was dismissed as procedurally defaulted and time-barred. On June 16, 2006, the Alabama Court of Criminal Appeals affirmed the dismissal.

On September 6, 2006, Hunter filed a third Rule 32 petition in state court, challenging for the first time his mental competency at the time he entered his guilty plea. The state court denied Hunter's third Rule 32 petition. On August 20, 2008, the Alabama Court of Criminal Appeals affirmed.

## III. Federal § 2254 Petition

On May 9, 2008, Hunter filed pro se the instant § 2254 petition, asserting that Hunter was "currently incompetent" and the state trial court violated his due process rights by failing to hold a competency hearing before accepting his guilty plea. Hunter's § 2254 petition was verified and signed by both Hunter and Brian Heath Harrison, who was identified on the pleading as "legal assistant/paralegal."

---

[1]The state court granted Hunter post-conviction relief on his claim that the trial court was without authority to accept Hunter's guilty plea to second degree robbery because the indictment did not allege that Hunter was aided by another person.

The state filed an answer, arguing, <u>inter alia</u>, that the § 2254 petition was untimely because it was filed more than one year after Hunter's state convictions became final. The district court treated the state's answer as a motion for summary judgment and notified Hunter of his right to respond. Hunter filed a response that was signed by Hunter and Harrison, the legal assistant/paralegal.

A magistrate judge entered a report ("R&R") recommending denial of Hunter's § 2254 petition as time-barred under the AEDPA's one-year statute of limitations and concluding that Hunter had not shown that the limitations period should be equitably tolled. Hunter filed an objection to the R&R and argued that the AEDPA's limitation period should be equitably tolled due to his mental deficiencies. Hunter's objection stated that it was filed "by and through Law Clerk, assigned at J.O Davis Correctional Facility . . . ." The objection was also signed by Henry Byrd, who was identified as "Law Clerk." Hunter's objection stated that he had challenged his convictions in state court "only after having the assistance of inmate law clerks because he could not manage his affairs or understand his legal rights and act upon them." Hunter also "assert[ed] and aver[red], through legal assistance of a law clerk, that his mental retardation prevented him from timely filing his federal habeas petition as to warrant the application of equitable tolling."

The district court adopted the R&R and dismissed Hunter's § 2254 petition as time-barred. As to Hunter's equitable tolling argument, the district court found that Hunter's "allegations [fell] short of establishing mental incompetence that prevented him from submitting his habeas petition in a timely fashion." The district court also found that Hunter had made only "a conclusory allegation that his mental retardation prevented him from timely filing his habeas petition," and had not proffered "factual support showing that he is or ever was actually mentally incompetent or completely unable to understand the nature and object of post-conviction proceedings and to present his case for post-conviction relief in a rational manner." The district court concluded that because the facts did not suggest that Hunter's delay in filing his § 2254 petition was due to "his actual mental incompetence," Hunter had not shown extraordinary circumstances warranting equitable tolling.

Hunter filed this appeal. We granted a certificate of appealability on the issue of "[w]hether the district court erred [in] concluding that Hunter's claim of mental incompetence did not equitably toll the statute of limitations for his petition for the writ of habeas corpus."

## IV. Discussion

The AEDPA imposes a one-year statute of limitations for filing a § 2254

habeas petition, which begins to run following one of four events, including, "the date on which the judgment became final." 28 U.S.C. § 2244(d)(1). However, "[e]quitable tolling can be applied to prevent the application of the AEDPA's statutory deadline . . . ." Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001). Because equitable tolling is "an extraordinary remedy," it "is limited to rare and exceptional circumstances" and "typically applied sparingly." Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005), aff'd, 549 U.S. 327, 127 S. Ct. 1079 (2007). Thus, we have concluded that equitable tolling is available only "'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" Id. (quoting Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999)). The petitioner bears the burden of showing that equitable tolling is warranted. See Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002).[2]

In Lawrence, we addressed the issue of whether a petitioner's "mental incapacity" may, under certain circumstances, justify equitable tolling of the one-year limitations period. See Lawrence, 421 F.3d at 1226-27. The petitioner in Lawrence stated that his full scale IQ was 81 and he had "suffered from mental impairments his entire life." Id. at 1227. This Court concluded that these

---

[2]We review de novo the district court's legal decision on equitable tolling and its factual findings for clear error. Drew, 297 F.3d at 1283.

contentions, alone, were "insufficient to justify equitable tolling" because they did not establish a "causal connection between [the petitioner's] alleged mental incapacity and his ability to file a timely petition." Id. at 1226-27.

In this case, there is no dispute that Hunter filed his § 2254 petition after the one-year limitations period expired.[3] And, mental impairment is not per se a reason to toll a statute of limitations. Nara v. Frank, 264 F.3d 310, 320 (3d Cir. 2001), overruled on other grounds, Merritt v. Blaine, 326 F.3d 157, 166 (3d Cir. 2003). Rather, as we explained in Lawrence, the alleged mental impairment must have affected the petitioner's ability to file a timely habeas petition. Thus, in the summary judgment posture of this case, the only question is whether Hunter has presented sufficient evidence to create a factual issue as to a causal connection between his mental incapacity and his ability to file a timely § 2254 petition.

In the district court, Hunter submitted Dr. Maier's 1997 competency report, which, as recounted above, showed that: (1) Hunter was diagnosed with chronic, irreversible mental retardation; (2) he has a full scale IQ score of 59, which is at the low-end of the mildly retarded range; (3) his IQ is lower than ninety-nine

---

[3]Hunter was required to file his § 2254 petition on or before March 11, 2000. Hunter did not file his petition until May 9, 2008, eight years after the limitations period expired. Because none of Hunter's state Rule 32 petitions were filed during the one-year period after his convictions became final, they did not toll the statute of limitations. See 28 U.S.C. § 2244(d)(2); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000).

10

percent of the population; (4) his mental retardation moderately to severely impairs his judgment, insight and problem-solving skills, which makes him unable to function independently; (5) he is illiterate; and (6) he suffers from severe expressive speech aphasia which makes it difficult for him to communicate intelligibly. In addition, although Dr. Maier ultimately concluded in 1997 that Hunter was "borderline" competent to stand trial, Dr. Maier's opinion hinged on Hunter's prior experience with the criminal justice process and the fact that Hunter would have access to an attorney who could adequately represent and educate him. Indeed, Dr. Maier noted that ordinarily someone with Hunter's mental condition would not have sufficient understanding to be considered competent and that he only found Hunter competent because he was "court wise" and would have access to adequate legal counsel.

Further, at this juncture, the record establishes that Hunter's § 2254 petition was prepared by other prison inmates assigned to him as legal assistants. Hunter averred that his three prior state Rule 32 petitions were filed with the assistance of prison law clerks, as was his § 2254 petition, because he is unable to "manage his affairs or understand his legal rights and act upon them." And, he averred "that his mental retardation prevented him from timely filing his federal habeas petition . . . ."

Construing Hunter's pro se pleadings liberally, Hunter claims that his mental retardation prevented him from understanding his rights and obligations under the AEDPA and acting upon them in a timely fashion. Dr. Maier's 1997 competency report corroborates, rather than contradicts, this claim. Whether a criminal defendant is competent to stand trial with an attorney is a materially different question from whether a habeas petitioner's undisputed, substantial mental retardation prevented him from filing pro se his § 2254 petition within the AEDPA's one-year limitations period. While Hunter did file state post-conviction petitions, it was only with the help of others. And, the record contains no indication that Hunter had prior experience with federal courts or filing a § 2254 petition. Moreover, Hunter did not have an attorney to assist and educate him. In other words, Hunter did not have the benefit of the two factors that led Dr. Maier to conclude Hunter was "borderline" competent to go to trial despite a significant intellectual handicap that Dr. Maier said "[n]ormally" would indicate an individual does not have sufficient understanding to be competent. Dr. Maier's report strongly suggests that Hunter's well-documented, irreversible mental retardation is severe enough that Hunter, by himself, is not able to understand and comply with the AEDPA's filing requirements and deadlines. Further, Dr. Maier's report suggests Hunter would have a very difficult time even assisting others in preparing

his § 2254 habeas petition.

Because Dr. Maier says Hunter's mental retardation is significant and irreversible, Dr. Maier's 1997 report remains probative of Hunter's mental impairment as to the § 2254 petition during the limitations period and beyond to 2008. And, the state has offered no evidence in response to Hunter's averments that he is not able to manage his affairs, he is not able to understand his legal rights or act upon them and his mental retardation prevented him from timely filing a § 2254 petition. Under the totality of the circumstances in this case, we conclude that Hunter's evidence, while not sufficient to establish definitively that the filing deadline should be equitably tolled (at all or for how long), is sufficient to raise a factual issue as to whether a causal connection exists between his mental impairment and his ability to file a timely § 2254 petition, precluding summary judgment at this juncture. Hunter's claims merit further investigation and factual development of the record. See Nara, 264 F.3d at 319-20 (remanding to district court to hold an evidentiary hearing where record indicated petitioner was severely mentally disabled shortly after he arrived in prison and was hospitalized several times, but contained no information as to petitioner's condition during the time period sought to be tolled).

Accordingly, we vacate the district court's order denying Hunter's § 2254

petition as time-barred and remand to the district court for the appointment of counsel pursuant to 18 U.S.C. § 3006A and for further investigation and factual development and proceedings on the merits of Hunter's equitable tolling claim. We leave to the district court's discretion how best to develop the record. <u>See</u> Rules Governing Section 2254 Cases 6, 7 & 8.

**VACATED and REMANDED.**