# United States Court of Appeals
## For the First Circuit

No. 07-1998

JAMES RIVA, II,

Petitioner, Appellant,

v.

EDWARD FICCO,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Howard, Selya and Thompson, Circuit Judges.

Randy Gioia, by appointment of the court, with whom Elizabeth Billowitz and Law Office of Randy Gioia were on brief, for appellant.
Annette C. Benedetto, Assistant Attorney General, Commonwealth of Massachusetts, with whom Martha Coakley, Attorney General, was on brief, for appellee.

August 5, 2010

**SELYA**, <u>Circuit Judge</u>.  This case presents a question of first impression in this circuit: Can mental illness equitably toll the one-year statute of limitations for the filing of a state prisoner's habeas petition contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d)(1)?  We hold that the district court correctly answered this question in the affirmative.  We nonetheless hold that the district court's further determination that the petitioner was not entitled to equitable tolling rests on too unsteady a foundation.  Consequently, we vacate the order dismissing the habeas petition and remand for further proceedings.

## I.  BACKGROUND

This case is fact-intensive, so we take pains to mine the record and recite the relevant background in some detail.  The facts themselves are largely undisputed (although they support conflicting inferences).

The petitioner, James Riva, II, suffers from paranoid schizophrenia.  His history of severe mental illness dates back to his adolescence.  His condition has required intermittent hospitalization since 1974.

On April 10, 1980, the petitioner killed his grandmother while under a paranoid delusion that, if he did not, he would fall prey to a society of vampires.  He was found competent to stand trial in state court and, on October 30, 1981, a jury convicted him

of second-degree murder, arson, and assault and battery on a police officer. The trial justice sentenced him to life imprisonment.

Four days later, the petitioner was committed to Bridgewater State Hospital (Bridgewater), where he remained until January 24, 1989. At that point, he was transferred to the general prison population. His stay there was short-lived; he was sent back to Bridgewater on September 6, 1990, after he assaulted a correctional officer while under a paranoid delusion that the officer had been draining fluid from the petitioner's spine. The petitioner was charged criminally for the assault, but was found not guilty by reason of insanity.

The petitioner remained at Bridgewater until August of 1999. During this interlude, he attempted to challenge his convictions in both state and federal courts. His trial counsel, John Spinale, filed a timely notice of appeal and motions for new trial and to revise or revoke the sentence. The trial justice denied the latter two motions, and Spinale withdrew as counsel. Attorney Willie Davis handled the appeal. The Massachusetts Appeals Court (MAC) affirmed both the convictions and the denial of the motion for new trial. Commonwealth v. Riva, 469 N.E.2d 1307, 1312 (Mass. App. Ct. 1984). On January 4, 1985, the Supreme Judicial Court (SJC) denied the petitioner's application for leave to obtain further appellate review (ALOFAR). Commonwealth v. Riva, 474 N.E.2d 181 (Mass. 1985) (table).

In 1987 the petitioner, acting pro se, filed an application for a writ of habeas corpus in the federal district court. The court dismissed the application on the ground that it contained unexhausted claims. We affirmed. Riva v. Getchell, 873 F.2d 1434 (1st Cir. 1989) (table).

On June 2, 1988, the petitioner, again acting pro se, filed a second motion for new trial. The state superior court appointed Dana Alan Curhan as counsel. Curhan filed an amended motion for new trial or post-conviction relief. The superior court denied the amended motion. The petitioner's counselled appeal was unsuccessful, Commonwealth v. Riva, 615 N.E.2d 606 (Mass. App. Ct. 1993) (table), and the SJC refused to grant an ALOFAR, Commonwealth v. Riva, 618 N.E.2d 1364 (Mass. 1993) (table).

Although Curhan's representation ended at that juncture, the petitioner was undaunted. On August 2, 1993, he filed a pro se motion to revise or revoke his sentence. His newly appointed counsel, Richard Passalacqua, filed a third motion for new trial on May 11, 1995. The superior court denied this motion approximately three months later, and Passalacqua withdrew as counsel.

The petitioner appealed pro se, but the MAC eventually dismissed the appeal for want of prosecution. On October 28, 1996, the superior court denied the petitioner's pro se motion to revise or revoke his sentence.

-4-

Meanwhile, the petitioner was attacking on a second front. On February 1, 1996, he repaired to the federal district court and filed another pro se application for habeas relief. The district court originally dismissed this case for insufficiency of service of process but later reopened it. The reopening came to naught, as the petitioner, apparently concerned about exhaustion, moved for a voluntary dismissal on November 25, 1996. See Fed. R. Civ. P. 41(a). The district court granted that motion. Riva v. DuBois, No. 96-10273 (D. Mass. Feb. 21, 1997) (unpublished order).

The petitioner's father hired Barbara Smith as counsel to prepare a third federal habeas petition. Smith died before completing the task, but on January 6, 1998, her law firm filed the habeas petition (quite possibly without the petitioner's consent). Because no authorization had been obtained to file a successive habeas petition, the district court transferred the case to this court.[1] We dismissed the petition for failure to prosecute. Riva v. Nelson, No. 99-1071 (1st Cir. Oct. 28, 1999) (unpublished order).

On March 17, 1999, the petitioner, acting pro se, filed a fourth new trial motion. The superior court denied this motion

---

[1] This order was improvident. Both prior habeas petitions were dismissed for want of exhaustion. Because neither was adjudicated on the merits, the third petition was not "successive" within the meaning of the habeas statute, 28 U.S.C. § 2244(b). See Slack v. McDaniel, 529 U.S. 473, 487 (2000); Pratt v. United States, 129 F.3d 54, 60 (1st Cir. 1997).

-5-

on December 13, 1999.  The MAC affirmed that order, <u>Commonwealth</u> v. <u>Riva</u>, 752 N.E.2d 242 (Mass. App. Ct. 2001) (table), and the SJC denied an ALOFAR, <u>Commonwealth</u> v. <u>Riva</u>, 752 N.E.2d 240 (Mass. 2001) (table).

On October 15, 2001, the petitioner, acting pro se, filed the habeas petition with which we are concerned.  The district court appointed counsel and ultimately dismissed the petition as untimely.  <u>Riva</u> v. <u>Ficco</u>, No. 01-12061, 2007 WL 954771, at *6 (D. Mass. Mar. 28, 2007).  The court held that the AEDPA statute of limitations was not tolled on the basis of the petitioner's mental illness.  <u>Id.</u> It reasoned that the petitioner's prolific filings in both state and federal courts demonstrated a capacity to comply with the filing deadline.  <u>Id.</u> at *5.  The court did not address the petitioner's claim that his actual innocence trumped the Commonwealth's limitations defense.  The district court issued a certificate of appealability, 28 U.S.C. § 2253(c), and this timely appeal ensued.

## II.  ANALYSIS

The AEDPA states in pertinent part that a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  <u>Id.</u> § 2244(d)(1).  The statute expressly provides that the limitations period is tolled by a "properly filed application for State post-conviction or other collateral review."  <u>Id.</u> § 2244(d)(2).  Equitable tolling is not mentioned.

-6-

The essence of equitable tolling is that, "in exceptional circumstances, a statute of limitations 'may be extended for equitable reasons not acknowledged in the statute creating the limitations period.'" Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004) (quoting David v. Hall, 318 F.3d 343, 345-46 (1st Cir. 2003)). After this case was briefed and argued, the Supreme Court determined that the AEDPA limitations period is subject to equitable tolling in appropriate circumstances. See Holland v. Florida, 130 S. Ct. 2549, 2560 (2010). The Holland Court recognized that the "exercise of a court's equity powers . . . must be made on a case-by-case basis," id. at 2563 (quoting Baggett v. Bullitt, 377 U.S. 360, 375 (1964)), and instructed lower courts to "exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case," id.

This court has not yet responded to Holland. We have cautioned, however, in a pre-Holland habeas case, that equitable tolling "is the exception rather than the rule," and that "resort to its prophylaxis is deemed justified only in extraordinary circumstances." Delaney v. Matesanz, 264 F.3d 7, 14 (1st Cir. 2001). These admonitions are consistent with the teachings of Holland.

A habeas petitioner bears the burden of establishing the basis for equitable tolling. Holland, 130 S. Ct. at 2562. To carry

this burden, he must demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see Trapp v. Spencer, 479 F.3d 53, 61 (1st Cir. 2007) (listing additional factors that may, in a given case, influence a habeas court's decision about whether to grant equitable tolling).

In the case at hand, we must decide whether the petitioner's mental illness constitutes an extraordinary circumstance that equitably tolls the AEDPA limitations period. This inquiry is binary. First, we must decide whether, as a general proposition, mental illness can qualify as an acceptable basis for equitable tolling. If so, we then must decide whether the petitioner's mental illness warrants equitable tolling. We take the two halves of the inquiry in order.

Although this court has yet to address the generic question of whether mental illness can constitute a ground for equitable tolling in a habeas case, some other courts of appeals have answered that question in the affirmative. See, e.g., Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir. 2010); Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009) (per curiam); Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir. 2003). No circuit has held to the contrary. Moreover, our own case law points in the same direction; in a different context, we recognized that mental illness

can equitably toll a federal statute of limitations. See Nunnally v. MacCausland, 996 F.2d 1, 5 (1st Cir. 1993) (per curiam) (applying equitable tolling in the context of the Civil Service Reform Act). We see no reason for refusing to extend that principle to the AEDPA context. We hold, therefore, that mental illness can constitute an extraordinary circumstance, which may prevent a habeas petitioner from understanding and acting upon his legal rights and thereby equitably toll the AEDPA limitations period.

We proceed now to the second dimension of our inquiry. Mental illness does not per se toll the AEDPA limitations period. See Bolarinwa, 593 F.3d at 232; Hunter, 587 F.3d at 1308. There must be some causal link between a petitioner's mental illness and his ability seasonably to file for habeas relief. See, e.g., Bolarinwa, 593 F.3d at 232 (requiring that petitioner "demonstrate that her particular disability constituted an 'extraordinary circumstance' severely impairing her ability to comply with the filing deadline, despite her diligent efforts to do so"); Hunter, 587 F.3d at 1308 (stating that "the alleged mental impairment must have affected the petitioner's ability to file a timely habeas petition"); Laws, 351 F.3d at 923 (allowing tolling so long as the "petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing deadline"); cf. Holland, 130 S. Ct. at 2562 (requiring a habeas petitioner to show that "some extraordinary circumstance . . . prevented timely filing").

In our view, a habeas petitioner satisfies the causation requirement if he can show that, during the relevant time frame, he suffered from a mental illness or impairment that so severely impaired his ability either effectively to pursue legal relief to his own behoof or, if represented, effectively to assist and communicate with counsel. See Nunnally, 996 F.2d at 6-7 (framing the question as "whether plaintiff's mental condition rendered her incapable of rationally cooperating with any counsel, and/or pursuing her claim on her own during the limitations period"). If a habeas petitioner satisfies this standard, he should not be held strictly accountable for complying with the AEDPA's filing deadline.

In the case at hand, the district court ruled that the petitioner's mental illness was not sufficiently disabling to toll the limitations period. Riva, 2007 WL 954771, at *6. We review a district court's determination about whether a particular set of facts warrants equitable tolling of the AEDPA's statute of limitations for abuse of discretion. See Cordle v. Guarino, 428 F.3d 46, 47 (1st Cir. 2005); Neverson, 366 F.3d at 42. Abuse of discretion is not a monolithic standard of review; within it, abstract questions of law are reviewed de novo, findings of raw fact are reviewed for clear error, and judgment calls receive a classically deferential reception. See United States v. Lewis, 517 F.3d 20, 24 (1st Cir. 2008); Roger Edwards, LLC v. Fiddes & Son Ltd., 427 F.3d 129, 132 (1st Cir. 2005).

With this prelude, we turn to the time line in this case. The petitioner's conviction became final in 1985, well before Congress passed the AEDPA. Thus, the petitioner was entitled to a one-year grace period running from April 24, 1996 (the AEDPA's effective date) within which to seek federal habeas relief. See Delaney, 264 F.3d at 10; Gaskins v. Duval, 183 F.3d 8, 9 (1st Cir. 1999) (per curiam).

The petitioner did not file the instant habeas petition until October 15, 2001. That was beyond the one-year grace period. Thus, absent tolling, the statute of limitations would have expired on April 24, 1997.

The petitioner's second motion to revise or revoke his sentence is of no help to him. Even though that motion was pending on April 24, 1996, it did not toll the limitations period because it was not a "properly filed application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2). The motion to revise or revoke was filed in 1993, several years beyond the period designated for the filing of such a motion.[2] It follows that the motion was untimely, and an untimely state post-conviction motion is not properly filed. See Pace, 544 U.S. at 414; Artuz v. Bennett, 531 U.S. 4, 8 (2000).

_____

[2] Under Massachusetts practice such a motion must be filed no later than sixty days from the date of sentencing or such later date when an appellate court either affirms the conviction or denies review. See Mass. R. Crim. P. 29(a).

-11-

The intervening period was partially tolled, however, by the pendency of the petitioner's fourth new trial motion in state court, so the clock did not run from March 17, 1999 (the date on which that motion was filed) to June 7, 2001 (the date on which the SJC denied the ALOFAR).[3] The petitioner does not allege that the four-month period between the latter date and his filing of the instant petition for a writ of habeas corpus was tolled. Consequently, the petition is time-barred unless the petitioner can show that his mental illness tolled the limitations period during most of the time span from April 24, 1996, to March 17, 1999 — what we shall call the "tolling period."

The medical reports in the record indicate quite clearly that the petitioner suffered from a debilitating mental illness throughout the tolling interval. After his conviction, he was committed to Bridgewater for a total of seventeen years, including most recently from 1990 to 1999. The documented symptoms of his paranoid schizophrenia included "bizarre delusions of a persecutory nature, paranoid ideation, auditory hallucinations and somatic terrors."

---

[3] The district court incorrectly stated that the statute of limitations began to run anew on December 13, 1999, when the superior court denied the motion. See Riva, 2007 WL 954771, at *4. Tolling continued, however, as long as the state courts had the motion under review. See Currie v. Matesanz, 281 F.3d 261, 266 (1st Cir. 2002) (explaining that a motion for new trial filed in Massachusetts remains pending from the time it is first filed until the time when the SJC denies further review).

The petitioner's annual master treatment plan, prepared on June 28, 1996, confirms the incidence of these symptoms during the tolling period. For example, the plan indicates that the petitioner underwent "recent experiences of auditory and visual hallucinations" and "urges to consume blood and flesh of others." It also describes his "poor, schizotypal presentation combined with [an] inability to manage bizarre impulses," which made him "a very high danger to himself and others." Under the heading "Identified Problem(s)," the plan notes a "delusional system marked by violent/paranoid ideation."

The petitioner's position is further bolstered by the testimonial evidence. In the district court, the petitioner presented expert testimony vouchsafing that his mental illness precluded him from consistently and effectively pursuing legal relief until August of 1999 (that is, throughout the tolling period). His symptoms did not subside until the doctors changed his treatment protocol — a change that led to his discharge from Bridgewater in August of 1999.

The petitioner's medical expert, Dr. Montgomery C. Brower, is a forensic psychiatrist and former deputy medical director at Bridgewater. He interviewed the petitioner in 2006 and reviewed the medical records and court filings. In an affidavit submitted to the district court, Dr. Brower explained that the petitioner was treated with anti-psychotic medications during his stay at Bridgewater and

that, although his acute psychotic symptoms improved with medication, he nonetheless "continued to experience, and at times act upon, an obsessional preoccupation with the delusion that he needed to obtain and consume human flesh."  Dr. Brower explained that "this residual psychosis interfered with Mr. Riva's ability to sustain the attention and effort necessary for him consistently and effectively to pursue legal review on his own behalf."  It was not until the petitioner's treatment with a new drug, Zyprexa, beginning in May of 1999, that his "delusional preoccupation with obtaining and consuming human flesh progressively diminished, fading away completely within nine months to a year."

Dr. Brower also examined the petitioner's writings made both before and after his treatment with Zyprexa.  The psychiatrist concluded that "[d]ocuments written after . . . show better organization and greater fluency and flexibility in Mr. Riva's thinking."

The Commonwealth offered no expert testimony, so Dr. Brower's views are uncontradicted.  Those views are consistent with the petitioner's affidavit, in which he declares that before the administration of Zyprexa, "I experienced periods of lucidity during which I was able to read, write, and think about my legal case.  These periods of lucidity were frequently disrupted by my preoccupation with obtaining and consuming human flesh.  Thus,

-14-

before August 1999, I could not focus long and well enough to properly attend to my legal case."

The district court rejected the testimony of Dr. Brower, relying instead on (i) the court filings made by the petitioner from 1985 to 1999 and (ii) observations about the petitioner's intelligence (contained in the 1999 Bridgewater discharge summary). See Riva, 2007 WL 954771, at *5-6. Although a trial court need not accept uncontradicted expert testimony, see, e.g., Parrilla-López v. United States, 841 F.2d 16, 19 (1st Cir. 1988), it must articulate a reasoned basis for refusing to do so. The district court's reasoning was flawed.

For one thing, the court's analysis of the petitioner's filings contains several factual errors. The court stated that the petitioner filed four pro se habeas petitions between 1985 and 1999. Riva, 2007 WL 954771, at *5. In fact, the petitioner filed three habeas petitions during that interval, only two of which were filed pro se. The court further stated that the petitioner made three pro se filings during the tolling period, referencing a 1996 motion for new trial, a 1998 petition for habeas corpus, and a 1999 petition for habeas corpus. Id. There was no 1996 pro se motion for new trial. The record reflects that the petitioner's counsel filed a motion for new trial in 1995, and the petitioner filed a pro se motion for new trial on March 17, 1999 (which tolled the running of the limitations period). To be sure, there was a 1998 habeas

-15-

petition, but it was not filed pro se. There was no habeas petition filed in 1999.

Courts should not be held to a standard of perfection, and small factual errors — even a series of small factual errors — do not necessarily undermine a trial court's ruling. But everything depends on context. Here, the court's factual errors are significant because, in the aggregate, they cast doubt upon its primary reason for rejecting the petitioner's uncontradicted expert testimony: the district court reasoned that the petitioner's "repeated submissions to courts" during the tolling period manifested his ability effectively to exercise his legal rights. Id. at *6. The court's misapprehension of the relevant facts shakes our confidence in this conclusion.

Withal, there is one pro se filing reflected in the record during the tolling period: the petitioner's request voluntarily to dismiss his 1996 habeas petition based on exhaustion concerns. This filing tends to indicate the petitioner's understanding of his legal rights. But that motion, too, must be weighed in context. The record indicates that the petitioner never served the respondent in that case and, for aught that appears, never made any substantive filings.

The petitioner's 1998 habeas petition also falls within the tolling period. That petition, however, was drafted and filed by counsel retained by the petitioner's father. There is no

-16-

evidence that the petitioner communicated with counsel regarding this filing; indeed, the petitioner alleges, again without contradiction in the record, that the petition was filed without his consent. This is borne out, at least inferentially, by the fact that the petition was dismissed for want of prosecution.

A second — and deeper — flaw in the district court's analysis is its heavy reliance on the fact of the petitioner's filings as opposed to either their content or their quality. This flaw is exacerbated by two other data points: the court's failure to address the petitioner's ability to sustain the lucidity necessary to effectively pursue legal redress once filings were effected, and its failure to consider whether the counselled filings enjoyed the petitioner's effective participation.

To illustrate, the district court relied on the fact that the petitioner, either pro se or through counsel, had taken a direct appeal and filed four new trial motions in the state courts. Id. at *5. Yet the court did not discount these filings at all despite the petitioner's obvious insanity at certain critical times (e.g., while counsel was pressing the second motion for new trial, the petitioner assaulted a correctional officer under a paranoid delusion and was recommitted to Bridgewater).

By the same token, the district court did not take into account that, after the petitioner's third motion for new trial was denied and the petitioner's counsel withdrew, the petitioner's pro

se appeal was dismissed on February 23, 1996, for want of prosecution. That dismissal, ignored by the district court, tends to support Dr. Brower's conclusion that, during the tolling period, the petitioner's "residual psychosis interfered with [his] ability to sustain the attention and effort necessary for him consistently and effectively to pursue legal review on his own behalf."

The final cause for concern involves the district court's reliance on a report of the petitioner's intelligence. The court reasoned that the petitioner's mental illness did not prevent him from complying with the filing deadline in part because his "overall cognitive abilities fall in the upper end of the average range." Id. But this is something of a non-sequitur. The petitioner is not claiming that he lacked the intelligence to comprehend and act upon his legal rights but, rather, that he lacked the sanity necessary to consistently and effectively pursue his legal rights.

There is no necessary correlation between intelligence and sanity, and the petitioner's claim does not depend on his IQ. In fact, the very report that contained the information about the petitioner's high intelligence noted that his "test profile reflects considerable test scatter, suggestive of uneven and disrupted functioning." And Dr. Brower concluded that the petitioner's high IQ substantiated the diagnosis of schizophrenia because the large discrepancy between the petitioner's verbal and performance IQ "typically indicates an organic abnormality in the functioning of

-18-

the left hemisphere of the brain," which is "associated with schizotypal personality disorder and schizophrenia."

We have held that when a district court "plainly consider[s] all the pertinent factors and no impertinent ones," and provides a "thorough explanation" of its reasoning, its "refusal to apply principles of equitable tolling to salvage the petitioner's time-barred habeas application" does not constitute an abuse of discretion. Delaney, 264 F.3d at 15; see Donovan v. Maine, 276 F.3d 87, 93 (1st Cir. 2002). Here, however, the lower court failed to consider relevant factors such as the content and quality of the petitioner's court filings. To compound this oversight, the court relied on an impertinent factor: the petitioner's raw intelligence. Finally, the court's explanation for rejecting the uncontroverted expert testimony depended on mischaracterizations of the facts. These difficulties, in combination, counsel against a finding that the district court acted within the encincture of its discretion in rejecting the petitioner's claim of equitable tolling.

Let us be perfectly clear. This is a complex case, in which various pieces of evidence point in different directions. It is a close call as to whether or not equitable tolling is warranted, and we do not suggest what that call ultimately should be. Here, however, there are simply too many unanswered questions to permit the judgment below to stand. Accordingly, we vacate the judgment and remand to the district court for further development of the

record with a view toward determining whether the petitioner's mental illness so severely impaired his ability effectively to pursue legal relief, either on his own behalf or through counsel, as to warrant equitable tolling of the AEDPA limitations period.[4]

## III. CONCLUSION

We need go no further. For the reasons elucidated above, we vacate the judgment and remand for further proceedings consistent with this opinion.

**Vacated and remanded**.

---

[4] The petitioner argues in the alternative that his actual innocence tolled the statute of limitations. See David, 318 F.3d at 347-48 (expressing skepticism as to whether a habeas petitioner's actual innocence can override the AEDPA's limitations period). The district court did not pass upon this claim. On remand, the district court should consider it. See Kuenzel v. Allen, 488 F.3d 1341, 1343 n.3 (11th Cir. 2007) (per curiam); see also López López v. Aran, 844 F.2d 898, 910 n.16 (1st Cir. 1988).