DRAIN, District Judge,
Dissenting.
I respectfully dissent from the majority opinion because further development of the record is necessary before resolving the issue of equitable tolling. The district court abused its discretion by assessing the evidence and finding, as the majority states, “that Kitchen was mentally stable and not in need of psychiatric treatment.” Ante, at 747. To the contrary, there is evidence in the record showing that medical professionals found Mr, Kitchen had a mental illness that could have stood in his way of filing a timely habeas petition. Therefore, I dissent from Part II of the majority’s opinion because further discovery on this record is needed.
With respect to Part III of the majority opinion, the majority is correct that this Circuit requires us to accept Mr. Kitchen’s allegations as true. Accordingly, the majority’s position that “an evidentiary hearing would be a futile exercise and a waste of valuable judicial resources” is inapplicable in light of Mr. Kitchen’s sufficiently specific allegation of incompetency that is consistent with the record. The majority *750 refuses to draw the slightest inference in Kitchen’s favor. Because we appear to be heightening the standard, I also dissent from Part III of the majority’s opinion and its reasoning behind the denial of an evi-dentiary hearing.
I.
In denying equitable tolling, the majority states that “[pjetitioner’s argument is based on speculation and conjecture.” Ante, at 747. However, the district court reached its conclusion regarding Kitchen’s mental health status based on what can only be considered “speculation and conjecture” after reviewing a record the majority itself states contained “no evidence of [Kitchen’s] mental health status during the relevant time period[.]” Id at 746.
According to the majority, the district court found “that the most recent evaluation of petitioner’s mental health concluded that Kitchen was mentally stable and not in need of psychiatric treatment.” Ante, at 747. Specifically, however, the district court found that “two [Michigan Department of Corrections (‘MDOC’)] medical reports confirm that[,] since at least December of 2005[,] Petitioner has been competent and was otherwise cognizant of his legal options.” As discussed below, the district court’s actual finding was clearly erroneous.
The MDOC medical report relied upon by the district court was a one-time determination in 2005 that indicated “[a]t the present, Mr. Kitchen does not require psychiatric treatment.” (emphasis added). Contrary to the district court’s finding, this one-time determination on December 16, 2005, that “[psychiatric treatment is not required,” did not “confirm that since at least December of 2005 Petitioner has been competent^]” (emphases added). To the contrary, nothing in the record confirms that Kitchen has been competent since at least December of 2005.
The district court’s finding was erroneous, because we actually “do not know whether [Kitchen’s] mental condition had deteriorated since his” incarceration with the MDOC, “such that he fell below a minimum standard of legal competence.” Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir.2003) (citing Godinez v. Moran, 509 U.S. 389, 399 n. 10, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), and Massey v. Moore, 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135 (1954)). The one-time December 16, 2005 finding by the MDOC had little bearing, if any, on Kitchen’s competence during the relevant tolling period two years later; a period for which the majority states there has been no evidence of Kitchen’s mental health status during the relevant time period. Cf. id. (“Laws was adjudicated competent to stand trial in 1993, notwithstanding evidence of serious mental illness. But that determination has little bearing on his competence vel non during the period 1996-2000, a period for which no medical records have been offered by either Laws or the respondent.”). Thus, the district court necessarily had to speculate to reach its conclusion that petitioner has been competent since at least December of 2005.
This is troubling because to reach the district court’s conclusion one has to discount a thorough and comprehensive medical report that was conducted by Kitchen’s treating psychiatrist of fourteen months who deemed him competent to stand trial. The report is critical as it provided a regimen of medication and treatment in order for Kitchen to remain competent. “In order to maintain competency,” Kitchen’s psychiatrist indicated “[Kitchen] will need to stay on the Risperdal and Clonopin.” The psychiatrist also indicated that Kitchen’s thyroid function would need to be *751 monitored because it “will be crucial for ... maintaining competency.” It is undisputed that none of this happened. Indeed, the district court found that Kitchen supported “the assertion that he has not received medication or treatment since November 2005[.]”
Thus, the district court abused its discretion by erroneously assessing the evidence to conclude Kitchen has been competent since December of 2005 despite evidence showing a direct correlation between Kitchen’s mental health and medicated status. See Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., — U.S. -, 134 S.Ct. 1744, 1748, 188 L.Ed.2d 829 (2014) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), to state: “A district court would necessarily abuse its discretion if it based its ruling on ... a clearly erroneous assessment of the evidence.”); see also Harris v. J.B. Robinson Jewelers, 627 F.3d 235, 240 (6th Cir.2010) (Griffin, J.) (citing United States v. Baker, 458 F.3d 513, 516 (6th Cir.2006), to state “it is an abuse of discretion to make errors of law or clear errors of factual determination.”) (emphasis added) (internal quotation marks and citation omitted).
Notwithstanding the district court’s abuse of discretion, the majority takes the position that “[e]ven if we were to accept that petitioner was mentally incompetent during the limitations period, petitioner failed to allege how his mental ineompeten-cy prevented him from filing a timely ha-beas petition.” Ante, at 747 (citing McSwain, 287 Fed.Appx. at 457). To reach this conclusion, the majority disregards the “claims that [Kitchen] suffered from mental incompetency before and during his criminal trial and that incompetency continued during the relevant tolling period.” Id. at 748. However, as the majority states, “the relevant inquiry is whether petitioner’s mental incompetency prevented him from filing a timely petition[.]” Id. (citing Ata, 662 F.3d at 742). Kitchen makes this showing through his allegations.
The majority emphasizes “the fact that Kitchen was able to file a civil action in federal court challenging his confinement within the one year limitations period demonstrates that any mental incompetency did not prevent him from pursuing his legal rights in a timely, albeit unsuccessful, manner.” Ante, at 748-49 (citing, inter alia, Price v. Lewis, 119 Fed.Appx. 725, 726-27 (6th Cir.2005)) (emphasis added). However, because the record indicates that Kitchen was diagnosed with a mental illness that has a direct bearing on his ability to timely pursue his rights, I respectfully disagree with the majority’s conclusion that he has failed to allege how his mental incompetency prevented him from pursuing his legal rights in a timely manner.
In Price v. Lewis, this Circuit noted that “[t]he exceptional circumstances that would justify equitable tolling on the basis of mental incapacity are not present when the party who seeks the tolling has been able to pursue his or her legal claims during the period of his or her alleged mental incapacity.” 119 Fed.Appx. at 726. Here, Petitioner has alleged that he was unable to timely pursue his legal claims during the period of his alleged mental incapacity because his mental delusions stood in his way and made it impossible for him to timely file a habeas petition. It is Kitchen’s ability to file a habeas petition that is at issue; not his general ability to file miscellaneous civil actions in federal court. Cf. Ante, at 748-49. I disagree with the majority because Kitchen’s ability to vaguely understand his substantive legal claims is a far cry from his ability to *752 procedurally pursue his legal claims given his delusions.
A petitioner’s knowledge of the legal basis of his claims is not the same as knowledge and comprehension of the procedural steps that must be complied with in order to get a hearing on the merits. See Whalem/Hunt v. Early, 233 F.3d 1146, 1149 (9th Cir.2000) (Tashima, Trott, and Berzon, JJ., concurring) (“The fact that, like a broken clock, a petitioner ... may [ ] be timely occasionally is not pertinent to determining whether there is an ‘impediment’ ... or an ‘extraordinary circumstance[.]’ ” Indeed, incompetency may hinder the ability “to learn and be guided by such critically important procedural rules as the governing limitations period.”).
The record here can serve as an example of the dangers of conflating these two concepts. Indeed, as the majority notes, in October of 2007, petitioner filed a pro se action in federal district court entitled, “Writ of Release in Pursuance of Lack of Subject Matter Jurisdiction Writ of Quo Warranto to Vacate Void Judgment.” This filing clearly had the thrust of a habeas petition so the magistrate judge properly informed Kitchen that he was required to file a petition for a writ of habeas corpus. Another panel of this Circuit told Kitchen the same thing. Notwithstanding this advice, Kitchen unsuccessfully appealed to the Supreme Court until his family retained counsel on his behalf.
While the majority may disagree, Kitchen’s “Writ of Quo Warranto” and other “quasi-legalistic ramblings” do evidence his inability to file a habeas petition. Kitchen was told to file a habeas petition, but his delusions — that he was a sovereign prince regent exempt from state authority and that all lawyers (including the judges who instructed him what to do) were “unregistered foreign agents” — stood in the way of taking that advice. Thus, Kitchen has made a specific allegation that, once in MDOC custody without his medication, his mental state deteriorated and stood in the way of being able to timely pursue his legal claims. After all, these quasi-legalistic ramblings contain the same delusional beliefs that lead the treating psychiatrist to conclude that it was necessary for Kitchen to remain medicated in order to remain competent.
The district court erroneously concluded that Kitchen has definitely been competent since 2005. At such an early stage in the litigation, this finding foreclosed any development of the record. Thus, with no medical evidence of Kitchen’s mental health status during the relevant time period, this panel is now left to debate conclusions made by judges and lawyers — not medical professionals. This has led to unsupported conclusions that “the evidence in the record ... tends to show that petitioner was not suffering from any mental illness during the limitations period[,]”[1] and Kitchen’s “competency was confirmed one week before trial.”[2] These findings are *753 not ours to make. Cf. Elliott v. Metro. Life Ins. Co., 473 F.3d 613, 622-23 (6th Cir.2006) (“We are not medical specialists and that judgment is not ours to make”).
Instead, the appropriate approach for this panel would be to vacate the decision below and remand for appropriate development of the record. See Price, 119 Fed.Appx. at 727 (Aldrich, D.J., dissenting) (“Tradition, bolstered by sound principles of deference and institutional competency, has made it axiomatic that district courts are best suited to the resolution of fact-intensive issues, such as the potential applicability of equitable tolling.”) (emphasis added). The record is simply too inadequate to permit the lower court, or this court, to evaluate the strength of Kitchen’s claim because there are critical unanswered questions regarding the medical data and mental state of Kitchen during the relevant tolling period. Cf. Metro. Life, 473 F.3d at 623 (remanding and noting that the parties “would be well advised to pursue appropriate medical data relating [to the Appellant’s] undeniable medical limitations[.]”).
Remanding to the district court for appropriate development of the record is the “sound approach[.]” Price, 119 Fed.Appx. at 727 (Aldrich, D.J., dissenting) (referencing Whalem/Hunt, 233 F.3d at 1148; United States v. Battles, 362 F.3d 1195, 1199 (9th Cir.2004); Molina v. United States, 27 Fed.Appx. 796, 797 (9th Cir.2001)). For example, in Him v. Ficco, the First Circuit remanded a case “for further development of the record with a view toward determining whether the petitioner’s mental illness so severely impaired his ability effectively to pursue legal rélief.” 615 F.3d 35, 44 (1st Cir.2010). They did so because in that “complex case, in which various pieces of evidence point in different direetions[,]” the petitioner who was diagnosed with a personality disorder claimed “he lacked the sanity necessary to consistently and effectively pursue his legal rights.” Id. at 44. The First Circuit remanded the case and noted that the district court “failed to consider relevant factors such as the content and quality of the petitioner’s court filings” and that these “difficulties, in combination, counsel against a finding that the district court acted within the encincture of its discretion in rejecting the petitioner’s claim of equitable tolling.” Id. Similarly, here, various pieces of evidence point in different directions, petitioner was diagnosed with Paranoid Delusional Disorder as well as an Anxiety Disorder NOS, and the district court failed to consider relevant factors such as the content of petitioner’s court findings.
In Hunter v. Ferrell, the Eleventh Circuit found that the petitioner’s claims merited “further investigation and factual development of the record[.]” 587 F.3d 1304, *754 1309 (11th Cir.2009). In that case, a doctor said that the petitioner’s mental retardation was significant and irreversible, such that the doctors report remained “probative of [petitioner’s] mental impairment as to the § 2254 petition during the limitations period and beyond to 2008.” Id. The Court found that the state had offered “no evidence in response to [the petitioner’s] averments that he is not able to manage his affairs, [and] he is not able to understand his legal rights or act upon them and his mental retardation prevented him from timely filing a § 2254 petition.” Accordingly, the Eleventh Circuit concluded, at the summary judgment stage, that the petitioner’s evidence, “while not sufficient to establish definitively that the .filing deadline should be equitably tolled (at all or for how long), is sufficient to raise a factual issue as to whether a causal connection exists between his mental impairment and his ability to file a timely § 2254 petition[.]” Id.
Here, a psychiatrist indicated that “[i]n order to maintain competency, [Kitchen] will need to stay on the Risperdal and Clonopin,” and Kitchen’s thyroid function would need to be monitored because it “will be crucial for ... maintaining competency.” This forward-looking evaluation after fourteen months of treatment remains probative with respect to Kitchen’s mental impairment as to the limitations period and beyond since even the district court found that Kitchen supported “the assertion that he has not received medication or treatment since- November 2005[.]” Moreover, since the state presented no evidence in response to Kitchen’s averments that he was not able to manage his affairs during the relevant tolling period, Kitchen’s evidence was at least sufficient to show a causal connection exists between his mental impairment and his ability to file a timely habeas petition. Cf. Hunter, 587 F.3d at 1309-10.
The panel should follow the sound approach of vacating the judgment, and remanding to the district court for further development of the record. See Riva, 615 F.3d at 44; Hunter, 587 F.3d at 1309-10; see also Laws, 351 F.3d at 924 (“[T]he district court erred in granting judgment against Laws based upon the papers then before it. It is enough that Laws ‘alleged mental incompetency,’ in a verified pleading. The district court should then have allowed discovery or ordered expansion of the factual record. Laws’s ability to file state and federal petitions in 2000 and thereafter. through assistance by another inmate cannot substitute for- development of the factual record concerning his mental state.prior to, that period.”). Instead, the panel has determined that Kitchen was competent despite medical evidence to the contrary. For these reasons, I respectfully dissent from Part II of the majority’s opinion.
H.
Next, the majority states that “[flor the same reason the district court did not err in denying Kitchen equitable tolling, it did not err in denying his request for an evi-dentiary hearing.” Ante, at 748. Moreover, the majority contends that “[o]n this record, an evidentiary hearing would be a futile - exercise and a waste of valuable judicial resources.” Id. at 749. As an initial matter, I reiterate that this panel should remand to the district court for further discovery because the district court is best suited to determine the course for further discovery, which may obviate the need for an evidentiary hearing. See Hunter, 587 F.3d at 1310 (citing Rules Governing Section 2254 Cases' 6, 7, & 8, in order to “leave to the district court’s discretion how best to develop the record.”); see also Laws, 351 F.3d at 924 *755 (same); Valverde v. Stinson, 224 F.3d 129, 135 (2d Cir.2000) (same). Nonetheless, I respectfully disagree with the majority’s reasoning behind its finding that no evi-dentiary hearing was required.
First, the majority concludes that Kitchen’s allegations were not sufficiently specific, stating he “has not alleged facts showing that his purported mental incompetency caused him to file' an untimely petition.” Ante, at 748. However, Kitchen did point to a specific way in which his mental illness prevented him from complying with AEDPA’s statute of limitations-his deteriorated mental state as a result of being unmedicated despite his diagnosis that he needed to remain medicated to remain competent. Accepting this claim as true, this allegation is sufficient. Cf. Ata, 662 F.3d at 743-44 (explaining that Ata’s allegations, “[wjhile certainly not elaborate” were sufficient because they explained the causal link between the purported mental incompetence and the untimely petition); id. at 744 (citing Bolarinwa, 593 F.3d at 229-30, 232, for its concrete allegations, which were “supported by a record of mental incapacity[.]”); id. (quoting Laws, 351 F.3d at 921-22, to find its allegations were concrete because “the petitioner had ‘made a good-faith allegation’ — specifically, ‘Laws’s ‘psychotic dfyjsfunction’ precluded his timely filing’ — ‘that would, if true, entitle him to equitable tolling[.]’ ”).
The majority then states “the evidence in the record does not support [Kitchen’s] claim.” Ante, at 749. However, there is nothing in the record that is inconsistent with Kitchen’s claims of a deteriorated mental state during the relevant time period. If anything, the record corroborates Kitchen’s allegations of mental incompetence preventing timely filing. Kitchen provided undisputed findings that he suffered from ongoing, if not consecutive, periods of persistent mental illness. He provided documents reflecting a history of mental illness, and a diagnosis of Paranoid Delusional and Anxiety Disorders to support his assertion that his mental state deteriorated while in MDOC custody. He further provided a sworn affidavit, which states that he had “not been prescribed Risperdal or Clonopin,” nor had any treatment while in the custody of the MDOC. Lastly, Kitchen provided a litany of documents that arguably indicate he was delusional and paranoid at the time relevant to tolling. Because his psychiatrist indicated that such treatment was necessary for Kitchen to maintain his competency, Kitchen’s pro se filings lend credence to his assertion, which we must accept as true, that his mental state deteriorated and his delusions stood in the way of his ability to adhere to the statutory deadline.
Contrary to the majority’s conclusion, Kitchen does not simply make bald assertions with no support in the record. Moreover, at the oral argument, Kitchen’s attorney stated that an evidentiary hearing could permit the Court to receive actual medical input regarding Kitchen’s mental state during the relevant tolling period. As described above, further discovery or an evidentiary hearing would certainly allow the district court to actually determine whether Kitchen has been competent since December of 2005 as opposed to speculating to reach that conclusion. If we accept Kitchen’s allegations as true, Kitchen has made a sufficient showing.
The majority does not accept Kitchen’s allegations as true as it refuses to draw the inference that Kitchen became incompetent after not being medicated. Ante, at 747 (suggesting that it is unreasonable “to infer that [Kitchen] became mentally incompetent because he stopped taking his medications in prison.”). Moreover, the majority concludes that “an evidentiary *756 hearing would be a futile exercise and a waste of valuable judicial resources.” Ante, at 749. This is not a proper approach and simply heightens, the standard for showing that one is entitled to an evi-dentiary hearing. See Ata, 662 F.3d at 741 (remanding the case even though it was “not clear whether Ata will meet his burden to demonstrate his entitlement to equitable tolling or whether Ata will ever prevail on his habeas petition.”); see also United States v. Battles, 362 F.3d 1196, 1199 (9th Cir.2004) (remanding for consideration of equitable tolling, although claim “may turn out to be a mere thread paper”).
An evidentiary hearing on these facts is proper when there has been a showing “of ongoing, if not consecutive periods of mental incompetency.” Nara v. Frank, 264 F.3d 310, 319-20 (3d Cir.2001), overruled in part on other grounds by Carey v. Saffold, 636 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002) (remanding to district court for evidentiary hearing where record indicated petitioner was mentally disabled and hospitalized several times, but there was “no evidence in the record” as to petitioner’s condition during the time period sought to be tolled). Indeed, evidentia-ry “hearings may be especially useful when a ‘limited record [has been] presented to the district court[.]’ ” Bolarinwa v. Williams, 593 F.3d 226, 232 (2d Cir.2010) (quoting Brown v. Parkchester S. Condominiums, 287 F.3d 58, 60 (2d Cir.2002)).
Here, although it is not clear whether Kitchen will be able to demonstrate that he is entitled to equitable tolling, he has put forth specific and Sufficient evidence of ongoing, if not consecutive, periods of mental incompetency. The record is not inconsistent with Kitchen’s claims of mental incompetency during the relevant tolling period. This is particularly relevant since Kitchen’s diagnosis of Paranoid Delusional Disorder as well as an Anxiety Disorder NOS required treatment and an accompanying regimen of medication that was not followed. Cf. Ata, 662 F.3d at 744. In sum, Kitchen presented a sufficiently specific allegation that, if taken as true, is consistent with the record. Accordingly, I respectfully dissent from the reasoning behind Part III of the majority’s opinion as well.
III.
In conclusion, the Supreme Court has indicated that dealing with questions of mental competency is “difficult” and that there are a “wide range of manifestations and subtle nuances [ ] implicated.” Drope, 420 U.S. at 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). The Supreme Court has also indicated that the mental competency of defendants should be “viewed in [] context.” Id. at 179, 95 S.Ct. 896. Because the district court failed to view this case in context, let alone consider the wide range of manifestations and subtle nuances that come with mental competency, I would at least vacate the judgment finding Kitchen is not entitled to equitable tolling, and remand to the district court for further discovery to determine if Kitchen is entitled to equitable tolling due to mental incompetence during the relevant tolling period. We should get appropriate medical input in this situation. Fortunately, these cases are to be evaluated on a case-by-case basis. Ata, 662 F.3d at 741 (quoting Keenan v. Bagley, 400 F.3d 417, 421 (6th Cir.2005)). Future petitioners should not be held to the high standard to which the majority holds Mr. Kitchen today.
For the foregoing reasons, I respectfully dissent.

. This majority finding is contrary to the record, which indicates multiple times that Kitchen was diagnosed with "Delusional Disorder, Paranoid Type; Anxiety Disorder, NOS[.]” Moreover, it is hard to square this with the fact that, at oral argument, the government effectively conceded that Mr. Kitchen had a mental illness. This led the government's attorney to argue that “mental illness is necessary for incompetence but not sufficient” before arguing that he would "have to imagine” that Kitchen was competent during the relevant tolling period because the MDOC said so. We do not "have to imagine” Kitchen was competent; that is what the district court did. Instead, as discussed below, I would remand to the district court for appropriate development of the record with actual medical input regarding the relevant tolling period.

. This judge’s finding that Kitchen was competent to stand trial in the middle of 2005, *753 while Kitchen was on medication to keep him competent, has no bearing on whether Kitchen was competent years later during the tolling period. Cf. Laws, 351 F.3d at 923. The majority’s assertions that Kitchen "was competent[;] he did not want to cooperate with the legal process,” ante, at 748 n. 2, came from a social worker; not a psychiatrist. The actual findings from the psychiatrist noted that "when [Kitchen] was taken off med watch, he appeared to deteriorate and was put back on med watch,” and that Kitchen’s "prognosis is essentially poor because of the longstanding nature of [his delusions.]” To be clear, there is no smoking gun showing that Kitchen was definitely incompetent. Cf. Drope v. Missouri, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) ("There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one ... [a]s suggested by the varying opinions trained psychiatrists can entertain on the same facts.”). However, a prior medical opinion on competence to stand trial saying that a petitioner needs to remain on drugs, and a finding that he wasn't on drugs, should be sufficient.