In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 15-1383

BRIAN K. BOULB,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

---

Appeal from the United States District Court for the
Southern District of Illinois
No. 14-cv-00737 — **J. Phil Gilbert**, *Judge*.

---

ARGUED FEBRUARY 25, 2016 — DECIDED APRIL 4, 2016

---

Before BAUER, MANION, and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge*. Brian Boulb filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 more than one year and four months after he had been sentenced and judgment had been entered against him. Relying on § 2255's one-year statute of limitations, the district court dismissed his petition as untimely without holding an evidentiary hearing.

On appeal, Boulb contends the district court erred in dismissing his petition without conducting an evidentiary hearing. The district court, according to Boulb, should have held a hearing to take evidence and determine if the limitations period was equitably tolled on account of his purported mental incompetence. Finding no fault with the district court's decision, we affirm.

## I.    BACKGROUND

Unpacking Boulb's federal habeas corpus petition is akin to opening a Russian matryoshka doll. It contains several procedural layers nested within each other. The first layer—his 2008 Illinois state court conviction—is where we start.

### A. Boulb's Illinois State Conviction

Boulb's current troubles began, according to his affidavit, in September 2008. That is when he was charged with unlawful possession of anhydrous ammonia, unlawful possession of a methamphetamine precursor, and unlawful possession of methamphetamine manufacturing materials in Richland County, Illinois. That same day, Boulb appeared in Richland County Circuit Court via computerized video conference and waived his right to appointed counsel. No transcript of the video conference appears in the record.

Around the same time as the hearing, Boulb alleges that he met with an attorney named David Hyde. According to Boulb, Hyde was the public defender appointed to represent him in connection with his 1998 charge and eventual conviction for driving under the influence.[1] Boulb contends that he

---

[1] Boulb's assertion that Hyde was his appointed lawyer for his 1998 case is dubious. A recent newspaper article indicates Hyde was an assistant

(continued…)

believed Hyde had been sent to represent him again. So, according to Boulb, when Hyde offered him a plea deal, Boulb thought it was his attorney discussing an offer from the prosecutor with him.

That, however, was not the case, Boulb asserts. In September 2008, Hyde was the Richland County State's Attorney. This fact, according to Boulb, was unbeknownst to him when he met with Hyde or agreed to the plea deal.

On October 3, 2008—just over a week after being charged—Boulb entered a negotiated plea of guilty to one count of unlawful possession of methamphetamine manufacturing materials. In exchange, the Richland County State's Attorney's Office agreed to drop the other two counts and to a sentence of four years' imprisonment for Boulb. The circuit court accepted the plea agreement and sentenced him to four years in prison.

In February 2009, Boulb filed *pro se* motions in circuit court seeking transcripts and the record from his case, as well as permission to proceed as a poor person and for appointment of counsel. The circuit court ordered the court reporter to prepare transcripts from his October 2008 plea hearing and sentencing. No ruling was made on Boulb's other requests. And, so far as we can tell, Boulb did not take any further action in connection with this case until 2013.

---

(…continued)

state's attorney from 1995 to 2004. Matt Courter, *County board chooses Vaughn as state's attorney*, Olney Daily Mail, Aug. 7, 2015.

*B. Boulb's Federal Conviction*

Nearly four years after Boulb's state court conviction, a federal grand jury returned a three-count indictment against Boulb on September 5, 2012, for the following: (1) conspiracy to manufacture 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841, 846; (2) possession of pseudoephedrine knowing it would be used to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(2); and (3) possession of equipment, chemicals, or material to manufacture methamphetamine in violation of 21 U.S.C. § 843(a)(6). According to the indictment, Boulb's involvement in the methamphetamine-production conspiracy started in November 2009—just over a year after his state-court conviction and sentencing—and ended in August 2012.

Less than two months after being indicted, Boulb agreed to plead guilty to all counts in the indictment. On February 14, 2013, the district court imposed a sentence of 235 months' imprisonment and four years of supervised release on Boulb.[2] According to Boulb, the district court classified him as a career offender pursuant to U.S.S.G. § 4B1.1 based on his two prior state court convictions, including his 2008 conviction, and sentenced him to 235 months' imprisonment. Boulb alleges that his defense attorney did not object to the district court's reliance on the 2008 conviction in determining his career-offender status. Judgment was entered against Boulb on February 20, 2013.

---

[2] Boulb's sentence was later reduced to 157 months.

*C. Boulb's Appeal from his 2008 Illinois State Conviction*

On March 25, 2013, Boulb filed a *pro se* notice of appeal of his 2008 conviction in Illinois state court, along with a motion to withdraw his guilty plea in connection with that conviction and to vacate the judgment. The circuit court appointed him counsel for his appeal.

In his appeal before the Illinois appellate court, Boulb argued his conviction should be reversed because the record did not contain a verbatim transcript of his waiver of counsel, as required by Illinois Supreme Court Rule 401(b). On September 19, 2014, the Illinois appellate court issued an unpublished opinion dismissing Boulb's appeal for lack of jurisdiction based on his failure to comply with the timeliness requirements set forth in Illinois Supreme Court Rules 604 and 606. *See People v. Boulb*, No. 5-13-0158, 2014 WL 4673130 (Ill. App. Ct. Sept. 19, 2014).

*D. Boulb's Federal Habeas Corpus Petition*

Before the Illinois appellate court ruled on his appeal, Boulb filed an affidavit in his federal criminal case on June 6, 2014. In the affidavit, Boulb laid out the allegations recounted above concerning Hyde and his interactions with Boulb, including Hyde's alleged involvement in Boulb's 1998 and 2008 cases.

On June 12, 2014, the district court issued an order relating to Boulb's affidavit. After construing it as a motion filed pursuant to § 2255, the district court warned Boulb that if he did not withdraw his motion, it would be subject to the second or successive filing requirements under § 2255.

Boulb responded by filing his habeas corpus petition on June 26, 2014.[3] After requesting that the district court incorporate his affidavit filed in the criminal case,[4] Boulb alleged his 2008 Illinois state conviction could not be considered a predicate offense on which the district court could rely in classifying him as a career offender under U.S.S.G. § 4B1.1. That is because, according to the petition, his 2008 conviction was procured by "[p]rosecutorial [m]isconduct and/or [i]neffective [a]ssistance of [c]ounsel." The petition also stated the lawyer who represented him in his federal case and sentencing was ineffective for "for failing to properly investigate the state conviction in which the petitioner was not represented by counsel."

Boulb also preemptively addressed the tardiness of his federal habeas corpus petition. According to the petition, Boulb's § 2255 motion was late because he was awaiting the outcome of his appeal in Illinois state court. That outcome, according to Boulb, affected his § 2255 motion.

In the paragraph preceding this explanation, Boulb wrote that he wanted to "inform" the court that "he is 'intellectual-

---

[3] The government states that Boulb filed his habeas corpus petition on June 23, 2013, pursuant to the "prison mail box rule." That rule provides that a habeas corpus "petition is deemed filed when given to the proper prison authorities and not when received by the district court clerk." *Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999). We need not resolve the dispute regarding the date on which Boulb "filed" his habeas corpus petition, as it is not outcome determinative.

[4] The district court would later file the affidavit in Boulb's habeas corpus case and deny the June 6, 2014, "motion" filed by Boulb in his criminal case as moot.

ly disabled' and that he is 'functionally illiterate.'" He also stated that he was "attaching an inmate education data transcript in support of these allegations." Boulb did attach a document entitled "Inmate Education Data Transcript" that lists courses and "High Test Scores" for "Subtest[s]."

After ordering briefing from the government on Boulb's habeas corpus petition, the district court granted the government's motion to dismiss Boulb's petition on February 6, 2015. It determined that Boulb's petition was untimely because he filed it sixteen months after final judgment in his federal case, well beyond the one-year limitations period under § 2255. The district court did not evaluate or discuss Boulb's allegation regarding his purported mental incompetence in its ruling. It did, however, determine in an earlier decision denying Boulb's request for appointed counsel that Boulb was "well able to articulate the contours of his arguments and will be able to obtain justice without an attorney."

Boulb appealed, and on July 14, 2015, this court construed his notice of appeal as an application for a certificate of appealability, which was then granted. We found Boulb had made a "substantial showing as to whether the district court sentenced him as a career offender based in part on a state conviction that was obtained in violation of his right to counsel." This court also asked the parties to address the issues of equitable tolling in light of Boulb's "alleged intellectual disability" and "waiver or procedural default in light of his allegation that counsel failed to investigate the predicate conviction during the federal sentencing proceeding."

## II.  ANALYSIS

Boulb does not contest the district court's finding that he filed his habeas corpus petition beyond the statute of limitations for such filings. Nor does Boulb appear to contest that his habeas corpus petition, affidavit, and inmate transcript formed a sufficient, stand-alone basis for the district court to excuse his untimely petition through equitable tolling.[5]

Rather, Boulb challenges the district court's decision to forego an evidentiary hearing. According to Boulb, the district court should have ordered a hearing to develop a more fulsome record upon which to decide whether equitable tolling excused his untimely petition on account of his alleged intellectual disability. Boulb requests that we vacate the district court's judgment and order the district court to hold such a hearing. We review decisions denying evidentiary hearings in a § 2255 setting for an abuse of discretion. *Hutchings v. United States*, 618 F.3d 693, 700 (7th Cir. 2010).

---

[5] We use the word "appear" because there are points in Boulb's opening brief where he *appears* to argue that equitable tolling applies to him on the facts as plead in his petition. (*See, e.g.*, Appellant's Br. at 7 ("Equitable Tolling Should Apply To Boulb's § 2255 Motion Because Boulb Is Intellectually Incompetent.").) In his conclusion, however, Boulb only asks that we reverse the dismissal of his § 2255 petition and remand his case to the district court for an evidentiary hearing to determine whether his mental incompetence warrants equitable tolling. Boulb's counsel also only sought the same relief at oral argument. Because we find that Boulb does not even merit an evidentiary hearing to determine whether his alleged mental incompetence interfered with his ability to timely file, we find he cannot meet the higher bar of qualifying for equitable tolling on his pleadings and supporting documents alone.

Not every petitioner who seeks relief pursuant to § 2255 is entitled to an evidentiary hearing. *Cooper v. United States*, 378 F.3d 638, 641–42 (7th Cir. 2004). A hearing is unnecessary when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). That is why we have said that a district court need not hold an evidentiary hearing "if the petitioner makes allegations that are vague, conclusory, or palpably incredible, rather than detailed and specific." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001) (quotation marks omitted). The court should, however, conduct an evidentiary hearing "when the petitioner alleges facts that, if proven, would entitle him to relief." *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009) (quotation marks omitted).

Before deciding whether Boulb proffered enough to justify an evidentiary hearing, we must first consider the standard for the relief he seeks, which, in this case, is equitable tolling. Under § 2255, the statute of limitations begins to run from the latest of four events, with the only relevant event in our case being "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Section 2255's "statute of limitations defense is not jurisdictional" and can be equitably tolled. *Holland v. Florida*, 560 U.S. 631, 645, 649 (2010) (alteration and quotation marks omitted); *see also Estremera v. United States*, 724 F.3d 773, 775 (7th Cir. 2013) (applying *Holland* to a § 2255 petition). To qualify for equitable tolling then, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (quotation marks omitted). Equitable tolling is "rare" and "reserved for extraordinary circumstances far beyond the litigant's control that prevent-

ed timely filing." *Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014) (quotation marks omitted).

In *Davis v. Humphreys*, 747 F.3d 497 (7th Cir. 2014), we held that mental incompetence can satisfy the equitable tolling standard articulated by the Supreme Court in *Holland*. We declined, however, to articulate "[w]hat sort of mental limitations justify tolling." *Davis*, 747 F.3d at 499–500. Instead, we remanded to the district court for an evidentiary hearing to determine the petitioner's mental abilities. *Id.* at 501.

Boulb argues that we should follow *Davis*'s result and remand this case to the district court for an evidentiary hearing. According to Boulb, his case is analogous to *Davis* in that there is insufficient information in the record to determine what Boulb's mental capabilities were and whether those affected his ability to timely file his § 2255 petition.

The problem for Boulb is that the petitioner in *Davis* provided specific facts about those alleged mental deficiencies, not conclusory allegations. In *Davis*, the petitioner appended a report from the Wisconsin prison system to his motion, which stated he had "an IQ of 49, [was] illiterate and uneducable, and cannot cope with any legal subject." 747 F.3d at 500. Boulb provided no such detailed report. Instead, Boulb attached a document to his petition entitled "Inmate Education Data Transcript." The data transcript includes a series of courses he took, "High Test Scores" in various subjects, including "Number OPR," "Reading Comp," and "Spelling," and scores for those tests. Nothing in this "transcript" explains how to interpret these scores. How could a district court ever divine from this "transcript" that Boulb had any mental deficiency?

As for Boulb's allegations that he is "'intellectually disabled'" and "'functionally illiterate,'" those allegations are conclusory and insufficient to justify an evidentiary hearing.[6] *See Galbraith v. United States*, 313 F.3d 1001, 1010 (7th Cir. 2002) (affirming district court's decision to forego an evidentiary hearing where petitioner did not provide "specific details"). While it is true that we recognized illiteracy as one of many facts in *Davis* supporting a remand for an evidentiary hearing, it was a fact corroborated by the Wisconsin prison system, not asserted by the petitioner himself. Boulb offers no such specific details in his motion, affidavit, or supporting documents regarding his purported mental deficiencies.

Boulb also did not raise to the district court the argument that his alleged mental deficiency affected his ability to timely file his petition, as the petitioner in *Davis* did. Instead, Boulb asserted his petition was late because he was awaiting the decision of the Illinois appellate court challenging his 2008 conviction. While his failure to raise this argument—and in fact proffering a different reason for the delay—supports the district court's decision to dismiss Boulb's complaint without an evidentiary hearing, it is not outcome determinative. *Cf. Coleman v. Hardy*, 690 F.3d 811, 818 (7th

---

[6] While Boulb's sworn affidavit makes no mention of his alleged mental deficiencies, his petition specifically requested that his affidavit and petition be "enjoined." Because we construe *pro se* pleadings liberally, we consider the statements made by Boulb in his memorandum to be incorporated into his affidavit. *See Hutchings v. United States*, 618 F.3d 693, 696 (7th Cir. 2010) (finding that petitioner "properly incorporated by reference his Memorandum into his sworn petition, especially considering his *pro se* status at the time of his original filing.")

Cir. 2012) ("It is well-established that arguments raised for the first time on appeal are waived.").

We recognize the inherent tension between requiring a petitioner to raise an argument and permitting mental incompetence to equitably toll the statute of limitations, for if a petitioner is so mentally deficient as to excuse late filing, it could be unfair to expect him to raise and articulate that excuse. We do not set forth a rule today that a *pro se* petitioner must under all circumstances connect his mental disability with his inability to timely file in his petition. Suffice it to say that a petitioner's mental incompetency may be so apparent from his pleadings and supporting materials that a district court may order an evidentiary hearing on the question without the petitioner requesting equitable tolling on account of mental disability.

That is not, however, the situation we have here. Were we to adopt the rule advanced by Boulb, any petitioner who baldy asserts that he is "'intellectually disabled'" and "'functionally illiterate'" and only attaches an indecipherable prison transcript would get an evidentiary hearing to determine whether the statute of limitations is equitably tolled on account of his or her alleged mental incompetency. Many inmates could do the same once § 2255's statute of limitations runs on the inmate's respective petition. This rule would prove unworkable and could have the practical effect of nullifying a district court's ability to forego an evidentiary hearing under § 2255. We refuse to adopt such a rule.

Decisions from outside this circuit confronting the question of equitable tolling for mental incompetency are of no help to Boulb's cause. *See Riva v. Ficco*, 615 F.3d 35 (1st Cir. 2010); *Bolarinwa v. Williams*, 593 F.3d 226 (2d Cir. 2010); *Ata*

*v. Scutt*, 662 F.3d 736 (6th Cir. 2011). The courts of appeal in those decisions all remanded the cases back to the district courts for further development to determine if the petitioners' purported mental incompetency so interfered with their ability to timely file that equitable tolling was warranted. Like *Davis*, however, each of the district courts in those cases had specific facts before them relating to the petitioners' alleged mental incompetency, not conclusory allegations. *See Riva*, 615 F.3d at 41–42 (petitioner proffered medical records demonstrating he "suffered from a debilitating mental illness throughout the tolling interval" along with medical expert testimony); *Bolarinwa*, 593 F.3d at 229–30 (petitioner with purported "'psychiatric problems'" alleged she had been placed in psychiatric units, provided dates for her alleged placement in those units as well as a letter from a social worker at one of the hospitals describing her psychiatric problems); *Ata*, 662 F.3d at 743 (petitioner alleged he had been hospitalized several times because of his paranoid schizophrenia and continues to be medicated by the state prison system for that illness and other psychoses).[7] As discussed above, Boulb has failed to do the same here.

Because we find that Boulb is not entitled to an evidentiary hearing on his request for equitable tolling on account of mental incompetence and he offers no other justification

---

[7] Boulb's reliance on *Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010) is also of no assistance, as the magistrate judge there had conducted an evidentiary hearing in the first instance to develop a more fulsome record. *Id.* at 1094–96. The Ninth Circuit was reviewing that record when it reversed and remanded for further proceedings in light of the legal standard it established.

to excuse his late filing, his petition is time-barred. There-fore, we need not reach the question of whether his claim was procedurally defaulted.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.