In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2860

JOSEPH LOMBARDO,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15 C 1038 — **James B. Zagel**, *Judge*.

ARGUED FEBRUARY 22, 2017 — DECIDED JUNE 20, 2017

Before BAUER and POSNER, *Circuit Judges*, and DEGUILIO,
*District Judge*.[*]

DEGUILIO, *District Judge*. Joseph Lombardo is serving a life
sentence on his convictions for racketeering, murder, and ob-
struction of justice. After we affirmed his convictions and sen-
tence on direct appeal, he retained a new attorney to argue

[*] Of the United States District Court for the Northern District of Indiana,
sitting by designation.

that his convictions were the product of his trial counsel's in-
effectiveness. However, his new attorney misunderstood
when the one-year limitations period for motions under 28
U.S.C. § 2255 began running, and thus filed Lombardo's mo-
tion too late.

The question in this appeal is whether an attorney's mis-
calculation of a statute of limitations justifies equitably tolling
the limitations period for a motion under § 2255. Following
longstanding precedent, we hold that it does not, even if the
result is to bar a claim of ineffective assistance of trial counsel.
We therefore affirm the district court's dismissal of Lom-
bardo's untimely motion.

## I.

Joseph Lombardo was a long-time member of the Chicago
Outfit, the lineal descendent of Al Capone's gang. He is also
no stranger to federal prosecution. In the 1970s, Lombardo
was federally indicted for Outfit thefts from the Teamster's
Pension Fund, but those charges were dropped when Daniel
Seifert, the key witness against him, was murdered prior to
trial—a murder for which the jury in this case found Lom-
bardo responsible. In the 1980s, Lombardo was charged and
convicted in two separate cases, one of which involved a con-
spiracy to bribe a United States Senator, and the other of
which involved maintaining hidden financial and manage-
ment interests in Las Vegas casinos. His convictions in those
cases were affirmed, and his appeals from various postcon-
viction motions were unsuccessful. *United States v. Williams*,
737 F.2d 594 (7th Cir. 1984); *United States v. Cerone*, 830 F.2d
938 (8th Cir. 1987); *United States v. Lombardo*, 859 F.2d 1328 (8th
Cir. 1988); *Lombardo v. United States*, 865 F.2d 155 (7th Cir.

1989); *Lombardo v. United States*, 956 F.2d 272 (table), No. 91-1085, 1992 WL 38620 (7th Cir. 1992).

In the present case, Lombardo was charged in 2005 with a racketeering conspiracy for "having conducted the Outfit's affairs through a pattern of racketeering activity that extended from the 1960s to 2005 and included a number of murders, along with extortion, obstruction of justice, and other crimes." *United States v. Schiro*, 679 F.3d 521, 524 (7th Cir. 2012). The indictment also charged him with committing the Seifert murder as part of that conspiracy. After his indictment, Lombardo evaded arrest for a number of months, leading to an obstruction of justice charge in a superseding indictment.

Lombardo was tried along with several of his co-defendants at a trial that lasted nearly three months. The jury convicted him on both counts and also found him responsible for the Seifert murder. The district court imposed a life sentence, and we affirmed Lombardo's conviction and sentence on appeal. *Schiro*, 679 F.3d 521. Lombardo then filed a petition for certiorari, which the Supreme Court denied on March 25, 2013. *Lombardo v. United States*, 133 S. Ct. 1633 (2013). Lombardo also petitioned for rehearing, but the Supreme Court denied that petition on June 3, 2013. *Lombardo v. United States*, 133 S. Ct. 2792 (2013).

At some point, Lombardo retained a new attorney, David Jay Bernstein, to represent him in his attempt to vacate his conviction. On May 31, 2014, Bernstein filed a motion under § 2255 on Lombardo's behalf, arguing that Lombardo received ineffective assistance of counsel at trial. In general, the motion and accompanying brief argued that Lombardo's trial counsel failed to adequately investigate the case and develop

his defense at trial, in violation of Lombardo's Sixth Amendment right to counsel.

The government moved to dismiss the motion as untimely. It noted that Lombardo's conviction became final for the purposes of § 2255 when the Supreme Court denied his petition for certiorari on March 25, 2013—not when it denied his petition for rehearing on June 3, 2013. Lombardo's motion on May 31, 2014 was thus filed outside the one-year statute of limitations under § 2255(f)(1).

In response, Lombardo conceded that his motion was untimely, but asked the district court to forgive the late filing on account of his attorney's "excusable neglect." His attorney represented that he miscalculated the deadline due to his mistaken belief that the statute of limitations began running only when the Supreme Court denied the petition for rehearing, not when it denied the petition for certiorari. He further represented that this error was "based on misinformation provided by a trusted paralegal." In a supplemental filing, he cited the Supreme Court's decision in *Holland v. Florida*, 560 U.S. 631 (2010) and asked that the statute of limitations be equitably tolled.

In its ruling, the district court agreed with the parties that the motion was filed outside the one-year statute of limitations, and it found that counsel's miscalculation of the deadline did not justify equitable tolling. Accordingly, it dismissed the motion as untimely and did not reach the merits of Lombardo's claim. After Lombardo appealed, we issued a certificate of appealability and instructed the parties to "address whether Lombardo is entitled to equitable tolling because of ineffective assistance of counsel in his initial-review collateral

proceeding. *See Trevino v. Thaler*, 133 S. Ct. 1911 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309 (2012); *Ramirez v. United States*, 799 F.3d 845, 852–54 (7th Cir. 2015)." Because doing so would require Bernstein to argue his own ineffectiveness, we also appointed new counsel to represent Lombardo on appeal.

## II.

Section 2255 contains a "1-year period of limitation" that runs from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). As relevant here, the judgment of conviction becomes final when the Supreme Court denies a petition for certiorari, regardless of whether a defendant then seeks rehearing before the Supreme Court. *Robinson v. United States*, 416 F.3d 645, 650 (7th Cir. 2005). Lombardo filed his petition just under one year after the denial of rehearing, but over fourteen months after the denial of certiorari, making his petition untimely. To avoid dismissal, Lombardo thus argues that the statute of limitations should be equitably tolled.

"[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). To qualify for equitable tolling, a petitioner must show: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland*, 560 U.S. at 649; *Boulb v. United States*, 818 F.3d 334, 339–40 (7th Cir. 2016). The district court found that Lombardo failed the second element, as he did not demonstrate extraordinary circumstances, so it dismissed the motion without needing to consider Lombardo's diligence. "'We review the decision to deny equitable tolling for an abuse of discretion.'" *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016) (quoting *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013)).

We first address Lombardo's argument that his attorney's error in calculating the statute of limitations meets the demanding standard for extraordinary circumstances required by existing precedent. We then address his argument that we should create an exception to that standard specific to claims of ineffective assistance of trial counsel, under which a petitioner could establish extraordinary circumstances by showing that their postconviction counsel was ineffective (or they had no counsel) and that their underlying claim has some merit.

### A.

In the district court, Lombardo asked to equitably toll the statute of limitations because his attorney mistakenly believed that the statute of limitations began running only upon the Supreme Court's denial of rehearing, not upon the denial of certiorari. However, as we, the Supreme Court, and other courts have consistently held, mistakes or miscalculations of that sort by a party's attorney do not satisfy the extraordinary circumstances element for equitable tolling. *E.g.*, *Holland*, 560 U.S. at 651–52; *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007); *Griffith v. Rednour*, 614 F.3d 328, 331 (7th Cir. 2010); *Robinson*, 416 F.3d at 650 n.1; *Rouse v. Lee*, 339 F.3d 238, 248–49 (4th Cir. 2003) (en banc) (collecting cases); *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003).

"Extraordinary circumstances" are present only when an "external obstacle" beyond the party's control "stood in [its] way" and caused the delay. *Menominee Indiana Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016). In other words, the circumstances that caused a party's delay must be "both extraordinary *and* beyond its control." *Id.* But parties are bound by the acts of the attorney they choose to represent them, just as a principal is bound by the acts of its agent. *Maples v. Thomas*, 565 U.S. 266, 280–81 (2012) ("[W]hen a petitioner's

postconviction counsel misses a filing deadline, the petitioner is bound by the oversight….”); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92 (1990) (“Under our system of representative litigation, ‘each party is deemed bound by the acts of his lawyer-agent….’” (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962))). Thus, errors by an attorney acting on a party's behalf do not constitute external obstacles beyond the party's control. *Johnson v. McBride*, 381 F.3d 587, 589–90 (7th Cir. 2004); *see Maples*, 565 U.S. at 280–82; *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (“[T]he attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must ‘bear the risk of attorney error.’” (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986))). This principle generally applies both to civil litigants and to habeas petitioners, neither of which have a constitutional right to counsel. *Lawrence*, 549 U.S. at 336–37; *Johnson*, 381 F.3d at 589–90; *see also Modrowski*, 322 F.3d at 968 (“[A]ttorney negligence is not extraordinary and clients, even if incarcerated, must vigilantly oversee, and ultimately bear responsibility for, their attorneys' actions or failures.” (internal quotation omitted)).

The mistake by Lombardo's counsel in identifying the correct filing deadline was neither extraordinary nor beyond Lombardo's control. Indeed, we have previously held that this exact same mistake did not warrant equitable tolling. In *Robinson*, the petitioner's counsel filed a § 2255 motion less than one year after the Supreme Court denied hearing—which counsel mistakenly believed to be the operative date—but more than one year after the Supreme Court denied certiorari. 416 F.3d at 646–47. The petitioner argued that the limitations period should be equitably tolled in light of this mistake. We disagreed: “Equitable tolling is granted sparingly, where extraordinary circumstances beyond the litigant's control prevented timely filing; a mistaken understanding about

the deadline for filing is not grounds for equitable tolling." *Id.* at 650 n.1.

That holding is consistent with the Supreme Court's more recent decisions on equitable tolling. In *Lawrence*, the Supreme Court confronted another mistake similar to the one here, in the context of a § 2254 petition by a state prisoner. 549 U.S. 327. Like under § 2255, petitions under § 2254 face a one-year statute of limitations from the date the conviction becomes final. 28 U.S.C. § 2244(d)(1). However, that period is tolled by statute for § 2254 petitions while a petition for post-conviction review is pending in the state courts. § 2244(d)(2). In *Lawrence*, the petitioner's attorney believed a state-court petition remained "pending" for statutory tolling purposes until the United States Supreme Court denied certiorari. The Supreme Court held, though, that a state-court petition is no longer pending once the state's highest court disposes of the petition, even if the petitioner then seeks certiorari from the Supreme Court. 549 U.S. at 332. By that standard, Lawrence's federal habeas petition was untimely.

Lawrence argued in the alternative that he was entitled to equitable tolling, but the Supreme Court disagreed, holding that he had "fallen far short of showing 'extraordinary circumstances' necessary to support equitable tolling." *Id.* at 337. In particular, the Court rejected the argument that an attorney's mistake of this sort would justify equitable tolling:

> Lawrence argues that his counsel's mistake in miscalculating the limitations period entitles him to equitable tolling. If credited, this argument would essentially equitably toll limitations periods for every person whose attorney missed a deadline. Attorney miscalculation is

> simply not sufficient to warrant equitable toll-
> ing, particularly in the postconviction context
> where prisoners have no constitutional right to
> counsel.

*Id.* at 336–37.

The Supreme Court reiterated these principles in *Holland*, stating that "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." 560 U.S. at 651–52 (internal quotations omitted). The facts of *Holland* extended well beyond a simple miscalculation or misunderstanding of the statute of limitations, though, and entailed an attorney's prolonged pattern of neglect and detachment from his client, involving years of directions that went unheeded, pleas for information that went unanswered, and requests for substitution of counsel that were denied. *Id.* at 652–53. Citing the equitable and fact-specific nature of the equitable tolling doctrine, the Court held that egregious attorney misconduct could sometimes amount to extraordinary circumstances so as to justify equitable tolling, and remanded for a determination of whether the attorney's conduct met that standard.[1] *Id.* at 649–52.

---

[1] In its subsequent decision in *Maples*, the Court characterized *Holland* as resting on the distinction between attorney negligence—which is attributable to the client—and attorney abandonment—which severs the principal–agent relationship, making the attorney's acts no longer attributable to the client. *Maples*, 565 U.S. at 281–83. The parties thus dispute whether *Holland* actually requires abandonment or only egregious misconduct, but we need not engage in that debate, as the circumstances here fall well short of meeting either standard.

The district court's decision here was a straightforward application of—and indeed was compelled by—these cases. The attorney in *Robinson* made the exact same mistake as Lombardo's attorney—believing that the statute of limitations began running once the Supreme Court denied rehearing instead of when it denied certiorari—and we held that such an error did not justify equitable tolling. 416 F.3d at 650 n.1. The attorney in *Lawrence* harbored a similar misunderstanding as to when the statute of limitations was running, and the Supreme Court likewise held that the error did not justify equitable tolling. 549 U.S. at 336–37. The same is true here.

Lombardo argues that his attorney's misconduct was in fact more serious, and thus comparable to the egregious misconduct in *Holland*, because his attorney relied on information from a "trusted paralegal" instead of researching and calculating the deadline himself. Every error of this sort will involve a similar type of shortcoming, though, whether the attorney doesn't do enough research, relies on the wrong type of source, or just plain gets it wrong. This factor alone thus does not elevate counsel's error to an extraordinary circumstance or meaningfully distinguish this case from others involving similar errors. *Lawrence*, 549 U.S. at 336 (noting that circuit precedent was unanimous at the time of counsel's misunderstanding of the applicable rule, implying that counsel had not done any research into the issue); *Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999) (rejecting an argument for equitable tolling where counsel "miscalculated the limitations period because of inadequate research"); *see Griffith*, 614 F.3d at 331 ("*Holland* tells us that a simple legal mistake does not excuse an untimely filing. It may be negligent to wait until what is by a lawyer's own calculation the last possible day,

because such a calculation could be wrong. But this kind of negligence is not 'extraordinary' by any means. Such a blunder does not extend the time for filing a collateral attack.").

Though some cases identify an attorney's failure to perform any research as among the factors that contributed to a finding of extraordinary circumstances, none of those cases rely solely on that factor or suggest it can be sufficient to support that finding.[2] *E.g.*, *Holland*, 560 U.S. at 652; *Baldayaque v. United States*, 338 F.3d 145, 152–53 (2d Cir. 2003). In *Baldayaque*, for example, the attorney not only misunderstood the statute of limitations and failed to perform the proper research on that topic, he never filed a motion under § 2255, even though he had been retained for that sole purpose, and he never spoke to or met with the petitioner, and did not follow up when his letter to the petitioner was returned as undeliverable. 338 F.3d at 152–53. And in *Holland*, as noted above, the attorney ignored the petitioner's repeated requests for information, failed to communicate with him over a period of years, and disregarded his express directions. 560 U.S. at 652–53. Those additional extenuating factors are absent here, as Lombardo's entire argument is premised on his attorney's miscalculation based on incorrect information from his paralegal.

---

[2] As we explained in *Socha*, "Defects in performance, whether through the attorney's own fault or attributable to extenuating circumstances, do not inevitably support equitable tolling, but they are relevant. The Supreme Court has identified some types of errors (such as miscalculation of a deadline) that do not warrant relief; it calls them 'garden variety' claims of excusable neglect, meaning that these errors are too common to be called 'extraordinary.'" 763 F.3d at 685 (quoting *Holland*, 560 U.S. at 651–52).

Lombardo also asks in the alternative that we remand for factual development as to whether his attorney actually abandoned him, but he has not justified that request. Lombardo did not raise any such argument to the district court and concedes even now that the record cannot support a finding of abandonment. Unsupported speculation raised for the first time on appeal is not a basis to remand.[3] *Boulb*, 818 F.3d at 341 (holding that conclusory and unsupported assertions of extraordinary circumstances did not warrant a remand for further development).

Therefore, at least absent our creation of an exception to this framework, to which we turn next, the district court did not abuse its discretion in finding that Lombardo did not establish extraordinary circumstances in support of his request for equitable tolling.

**B.**

Lombardo's alternative argument is that we should create an exception to this element for equitable tolling specific to claims of ineffective assistance of trial counsel. In particular, he asks us to hold that for such claims, a petitioner can establish extraordinary circumstances by showing that (1) they had no postconviction counsel or their counsel was ineffective, and (2) their underlying claim has "some merit." Lombardo bases this argument on the Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), which created a similar framework by which state prisoners seeking federal habeas review could excuse their procedural default.

---

[3] We express no position as to whether this issue might be raised through post-judgment motions in the district court.

By way of background, before state prisoners file a habeas petition in federal court under 28 U.S.C. § 2254, they must first assert their claim throughout at least one complete round of state-court review. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014). When they fail to do so, either because they omit their claim from the state proceedings or they fail to comply with the state's procedural requirements in presenting their claim, the claim is considered procedurally defaulted. *Martinez*, 566 U.S. at 9–10; *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017). Federal courts typically will not consider such a claim on its merits. *Martinez*, 566 U.S. at 9–10. There are limited exceptions to this rule, however, including when a petitioner can establish cause for the default and prejudice from a violation of federal law. *Id.* at 10.

These rules are not grounded in statute, but in concerns of comity and federalism. *Coleman*, 501 U.S. at 730. They are "designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez*, 566 U.S. at 9. Thus, the contours of this doctrine and the availability of exceptions thereto "are elaborated in the exercise of the Court's discretion," based on its equitable judgment. *Id.* at 13.

The Supreme Court recognized one such exception in *Martinez*. There, the state prisoner wished to argue in his federal petition that his trial counsel was ineffective. *Id.* at 7. However, that claim was procedurally defaulted because he did not raise it in his state postconviction proceeding. *Id.* Instead, the attorney that had been appointed for him in that proceeding filed a notice akin to an *Anders* brief, contending that he lacked any meritorious claim. *Id.* at 6. Thus, when the

petitioner filed his federal petition, the district court dismissed it as procedurally defaulted, finding that an attorney's errors in a postconviction proceeding do not qualify as cause for a default. *Id.* at 7–8.

The Supreme Court reversed, creating a narrow exception to procedural default in those circumstances. It noted that claims for ineffective assistance of trial counsel are unique in that they often can only be raised in postconviction proceedings. 566 U.S. at 11. If, because they lack counsel at that stage or because their postconviction counsel is ineffective, petitioners do not raise their ineffective-assistance claim in the state postconviction proceedings, then the state courts will have never considered the claim and it will be procedurally defaulted in the federal proceedings. *Id.* at 10–11. And because petitioners do not have a constitutional right to counsel at the postconviction stage, they could not avoid default by presenting an independent claim for ineffective-assistance-of-postconviction-counsel, as they could for issues that should have been raised by trial or appellate counsel. *Id.* Thus, enforcing the procedural default in the federal proceeding would mean that no court at any stage will have considered the ineffective -assistance-of-trial-counsel claim on its merits. *Id.*

To avoid that result, the Supreme Court exercised its equitable discretion to create a framework by which state prisoners could excuse their procedural default for claims of ineffective assistance of trial counsel that had not been considered on its merits at any stage of the proceedings in state court. *Id.* at 13–14. Under that framework, the petitioners would first have to show either that they had no counsel or that their

counsel was ineffective in the state postconviction proceeding. *Id.* at 14. Second, they would have to show that their underlying claim of ineffective assistance of trial counsel has at least "some merit." *Id. Martinez* initially held that this rule applied only in states that barred defendants from presenting these claims until postconviction proceedings, *id.* at 17, but the Court modified that limitation in *Trevino* to also apply the rule in states that theoretically permit petitioners to raise those claims on direct review, but make it virtually impossible to do so, 133 S. Ct. at 1915.

*Martinez's* holding carved out a limited exception to the Supreme Court's previous holding in *Coleman*. Relying on principles of agency law, *Coleman* had held that the ineffectiveness of a postconviction attorney does not constitute cause to excuse a procedural default, as the attorney's actions are chargeable to the client. 501 U.S. at 752–53. *Martinez* modified that rule by permitting an attorney's ineffectiveness to be considered in this narrow context. *Martinez* emphasized, however, that its holding created only a "limited qualification" to *Coleman's* rule, and it took pains to explain the limited impact of its holding:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim

> of ineffective assistance at trial, even though
> that initial-review collateral proceeding may be
> deficient for other reasons.

*Martinez*, 566 U.S. at 16 (internal citations omitted).

Lombardo nonetheless seeks to apply *Martinez's* holding in the context of equitable tolling. He notes that, like the petitioners in *Martinez* and *Trevino*, federal defendants are typically unable to present ineffective-assistance-of-trial-counsel claims until their postconviction proceedings, at which they do not have a constitutional right to counsel. He further notes that enforcing the statute of limitations to bar his ineffective-assistance claim at this stage would mean that no court will have considered that claim on its merits. He thus argues that he should be able to use *Martinez's* framework to satisfy the "extraordinary circumstances" element for the purposes of equitable tolling.

To begin with, though, *Martinez's* holding itself is not applicable here. *Martinez* arose in the context of procedural default, and established a framework by which state prisoners could establish cause and prejudice to excuse their procedural default and thus present claims in a federal habeas petition that they failed to present to the state courts. However, even state prisoners who meet that standard, and can thus present their claims in federal court without being procedurally defaulted, must still file their petition in federal court within the statute of limitations. In that sense they are in the same boat as federal prisoners, who never face procedural default for ineffective-assistance claims, *Massaro v. United States*, 538 U.S. 500 (2003), but who likewise must still comply with the statute of limitations to assert their claims. *Martinez* said nothing

about excusing that independent procedural requirement for either state or federal petitioners.

Lombardo's argument is thus that we should extend *Martinez's* reasoning to create a similar exception to the statute of limitations, under which an attorney's ineffectiveness would constitute extraordinary circumstances. However, that argument runs headlong into the Supreme Court's holdings in *Lawrence* and *Holland*, both of which held that attorney negligence, such as miscalculating a filing deadline, does not constitute an extraordinary circumstance for the purposes of equitable tolling. True, the Supreme Court has not applied those holdings in this precise fact-pattern, where the statute of limitations would bar an initial review of a claim for ineffective assistance of trial counsel. We do not read *Lawrence* and *Holland* as being so paper-thin that they only apply to the postures in which they arose, though. Nothing in those cases suggested that their equitable-tolling holdings turned on the nature or merits of the underlying claims. To the contrary, those cases applied generally applicable principles in holding that a "'garden variety claim of excusable neglect'" does not warrant equitable tolling. *Holland*, 560 U.S. at 651–52 (quoting *Irwin*, 498 U.S. at 96); *Lawrence*, 549 U.S. at 336; *see also Menominee Indian Tribe*, 136 S. Ct. at 756–57.[4]

---

[4] The petitioners in *Holland* and *Lawrence* were also each challenging death sentences. If the Supreme Court was amenable to applying more lenient equitable tolling standards to protect particularly important categories of claims, those capital cases would have been good candidates for such a rule. Yet in both cases the Supreme Court insisted on a showing of extraordinary circumstances beyond the miscalculation of a deadline.

It is also true, as Lombardo notes, that *Martinez* invoked equitable principles, and that its concern over allowing petitioners to present an ineffective-assistance-of-trial-counsel claim to at least one court could apply much the same here. But even if we believed that *Martinez's* reasoning undermined the vitality of the Supreme Court's previous holdings in *Lawrence* and *Holland*, only the Supreme Court has the prerogative of overruling or modifying those holdings. *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). Given *Martinez's* emphatic statement that its holding was limited to its narrow circumstances, we cannot find that the Supreme Court has already done so. Until it tells us otherwise, we take the Court at its word and decline to hold that *Martinez* created carve-outs to the holdings in *Lawrence* and *Holland*. *See Mathis v. United States*, 136 S. Ct. 2243, 2254 (2016) ("[A] good rule of thumb for reading [Supreme Court] decisions is that what they say and what they mean are one and the same[.]").

Moreover, our own precedent *has* squarely addressed this precise scenario, and we have held that errors identical to that of Lombardo's counsel do not constitute extraordinary circumstances, even when the petitioners wished to assert ineffective-assistance-of-trial-counsel claims in the first instance. *E.g.*, *Robinson*, 416 F.3d at 650 n.1; *Marcello*, 212 F.3d at 1010. Again, since *Martinez* emphatically limited its holding to the narrow context before it, we do not see *Martinez* as justifying our reconsideration of that precedent.[5] *De Leon Castellanos v. Holder*, 652 F.3d 762, 765 (7th Cir. 2011) (noting that "it would take compelling circumstances, or an intervening on-point

---

[5] To be clear, we do not hold that *Martinez* has no relevance or application outside its particular context, only that it does not justify upsetting settled precedent in this particular context.

Supreme Court decision, to disturb" settled circuit precedent). Taking that step would also entail creating a circuit split, as the Eleventh Circuit (the only other circuit to have addressed this issue) has likewise refused to extend *Martinez* to the context of equitable tolling. *Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("[T]he reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."). Many district courts have done likewise, and Lombardo has not cited a single case to the contrary.

Lombardo argues that we already went much of the way to importing *Martinez's* framework into equitable tolling in *Ramirez*. There, we held that the district court abused its discretion in denying a Rule 60(b)(6) motion following the denial of an ineffective assistance claim under § 2255, as counsel abandoned the petitioner once the motion was denied, causing him to lose his ability to file what would have been a meritorious appeal. 799 F.3d at 847–48. In doing so, we drew in part on the principles underlying *Martinez* and *Trevino* relative to the importance of ineffective assistance claims and petitioners' inability to raise them at an earlier stage in the proceedings. *Id.* at 853–54. Lombardo thus argues that because Rule 60(b)(6) and equitable tolling are both equitable in nature and require "extraordinary circumstances," it is only a short step from *Ramirez* to the result he seeks here.

We disagree, as *Ramirez* is distinguishable in at least two key respects. First, it arose in the context of a Rule 60(b) motion, not in the context of equitable tolling. Though, as Lombardo notes, both contexts involve equitable principles, *Ramirez* did not have to contend with the longstanding precedent in the equitable tolling context holding that this sort of

error by counsel does not justify equitable tolling. As discussed above, recognizing such an exception here would be inconsistent with Supreme Court precedent, and would require us to overturn our own precedent on this topic and create a circuit split. *Ramirez* did not do so, *Brooks v. Wells*, 279 F.3d 518, 522 (7th Cir. 2002) ("One panel of this court cannot overrule another implicitly. Overruling requires recognition of the decision to be undone and circulation to the full court under Circuit Rule 40(e)."), nor do we.

Second, *Ramirez* rested not on a miscalculation of a deadline , but on a finding that Ramirez's counsel abandoned him.[6] *Ramirez*, 799 F.3d at 854 ("Counsel's abandonment deprived Ramirez of the ability to press his ineffective assistance argument on appeal." (citing *Maples* and *Holland*)); *see also id.* at 850 ("Most importantly, postconviction counsel abandoned Ramirez on appeal…."); *id.* at 851 ("Ramirez points to his abandonment by counsel as the extraordinary circumstance that justifies re-opening his section 2255 proceeding."). And since the misconduct took place after entry of judgment,[7] it fell outside the purview of *Martinez*, as at least one court had adjudicated the ineffective-assistance claim on its merits. *Martinez*, 566 U.S. at 16 ("The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this

---

[6] Though *Ramirez* expressed some question about habeas counsel's performance, it did not hold that his presentation of the underlying claim was ineffective; to the contrary, it held that the motion should have been granted on its merits even as it was presented to the district court. 799 F.3d at 855–56.

[7] *Ramirez* identified habeas counsel's errors as failing to inform the petitioner of the district court's denial of his motion, failing to file any post-judgment motions, and failing to file a notice of appeal. 799 F.3d at 849.

case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings…."); *Coleman*, 501 U.S. at 751 (holding that counsel's
neglect in failing to file a timely notice of appeal was insufficient to excuse the petitioner's procedural default). Thus, notwithstanding its discussion of *Martinez* and *Trevino* and its
embracing of the principles underlying those cases, *Ramirez's*
holding is best construed as resting on abandonment under
*Maples* and *Holland*.[8] Understood in that manner, *Ramirez* is of
no assistance to Lombardo, as *Maples* and *Holland* apply to equitable tolling by their own terms, but Lombardo cannot
make the showing of abandonment or egregious attorney
misconduct required under those cases. Accordingly, *Ramirez*
does not control the outcome in this case, nor does it go nearly
as far as Lombardo contends in bridging the gap to the conclusion he asks us to reach.

Moreover, importing *Martinez's* framework into the equitable tolling context would greatly erode the statute of limitations. Though Lombardo relies on an error made by his post-
conviction counsel, *Martinez* applied equally to petitioners
with ineffective counsel and petitioners with no counsel. 566
U.S. at 17. Thus, pro se prisoners, who make up the vast majority of filers, would no longer have to show any actual extraordinary circumstances that stood in their way; they would
merely need to have a claim with "some merit" to satisfy the
extraordinary circumstances element. We recently rejected
such an expansion of equitable tolling:

---

[8] The en banc Ninth Circuit has interpreted *Ramirez* in that way. *Washington v. Ryan*, 833 F.3d 1087, 1094–95 (9th Cir. 2016) (en banc).

> [L]ack of representation is not on its own suffi-
> cient to warrant equitable tolling, nor is a peti-
> tioner's lack of legal training. Prisoners do not
> have a constitutional right to the assistance of
> counsel in post-conviction collateral attacks. We
> cannot give the label "extraordinary" to a trait
> that applies to 92 percent of prisoners filing pe-
> titions. Nor is lack of legal knowledge, another
> feature shared by the overwhelming majority of
> prisoners, by itself enough to justify equitable
> tolling. The statutory deadlines would be mean-
> ingless if either of these common problems were
> enough to override the normal rules.

*Socha v. Boughton*, 763 F.3d 674, 685 (7th Cir. 2014) (internal
citations omitted); *see also Boulb*, 818 F.3d at 341 (holding for
similar reasons that conclusory allegations of an intellectual
disability by a pro se petitioner do not justify an evidentiary
hearing on equitable tolling). Represented filers would like-
wise effectively be exempt from having to establish extraordi-
nary circumstances, as an attorney's failure to file a petition
on time would almost always satisfy *Martinez's* ineffective-
ness prong (even though, as courts have repeatedly held, it is
hardly extraordinary). *Lawrence*, 549 U.S. at 336–37. Thus, no
federal prisoner with a claim of ineffective assistance of trial
counsel would *ever* have to establish any actual extraordinary
circumstances in support of equitable tolling for such a claim.

Petitioners would still have to show that their claim has
"some merit" to satisfy *Martinez's* test, but that requirement
would be of little consequence. Meritless § 2255 motions are
already subject to dismissal at the outset. *See* Rule 4(b) of the
Rules Governing Section 2255 Proceedings for the United

States District Courts. And it would be anomalous to have to consider the merits of an underlying claim in deciding a threshold question like whether the statute of limitations applies. For that reason, we have previously refused to consider the nature or merits of an underlying claim in deciding whether to apply equitable tolling.[9] *Johnson*, 381 F.3d at 590–91; *see also Rouse*, 339 F.3d at 251.

In short, under Lombardo's proposed framework, every petitioner whose ineffective-assistance claim wouldn't already fail on other grounds will have established extraordinary circumstances. That would effectively transform the statute of limitations into a mere safe-harbor provision, as petitioners could still file their ineffective-assistance claim at any time so long as they have exercised reasonable diligence. Equity does not require, and precedent does not permit, such an undermining of the congressionally enacted statute of limitations.

For those reasons, we decline to recognize *Martinez's* framework as a means of establishing extraordinary circumstances for the purposes of equitable tolling. Therefore, the

---

[9] As we stated in *Johnson*, "'allowing consideration of the merits of time-barred claims to creep into the equitable tolling analysis lets petitioners effectively circumvent the statute of limitations because the merits of their claims will always be considered. This would enable petitioners who were in no way prevented from complying with the statute of limitations to create delay and undermine finality—two of the reasons that precipitated enactment of the AEDPA statute of limitations. It is thus best never to apply equitable tolling based on a factor that had nothing to do with a failure to file on time.'" 381 F.3d at 590–91 (quoting *Rouse*, 339 F.3d at 251) (internal alterations omitted).

district court did not abuse its discretion in finding that Lombardo was not entitled to equitable tolling and dismissing his motion as untimely.

**III.**

The judgment of the district court is AFFIRMED.

POSNER, *Circuit Judge*, dissenting. Lombardo was convicted in federal district court of several gang-related activities, including a murder, and was sentenced to life in prison. After unsuccessfully appealing, he moved the sentencing court, pursuant to 28 U.S.C. § 2255(a), to set aside his sentence on the ground that he'd been denied effective assistance of counsel at his trial, in violation of his Sixth Amendment right "in all criminal prosecutions … to have the Assistance of Counsel for his defence"; if there was such a denial, he is entitled to a new trial.

Because his conviction became final on March 25, 2013, the one-year statutory deadline for filing such a motion (see 28 U.S.C. § 2255(f)) was the same day the following year—and he missed that deadline. It was the fault of his lawyer (a different lawyer from the one who had defended him at trial), who, not knowing when the deadline for filing the motion was, failed to consult a knowledgeable lawyer, instead relying entirely on the unsound advice of a paralegal (referred to by the lawyer as a "trusted paralegal," though actually untrustworthy) who informed him that the deadline was not March 25, 2014 (the true deadline), but June 3, 2014. As the lawyer explained to the court, "Counsel's [i.e., his own] miscalculation was based on misinformation provided by a trusted paralegal that his client's one year time limit to file a 2255 motion began on June 3, 2013 (the day the petitioner's motion for rehearing on his writ of certiorari was denied). As it turns out, counsel was mistaken in his belief that his client's one-year time limit began when the motion for rehearing was denied. Based upon this mistake, a mistake made by counsel, the government is asking this honorable court to issue an order dismissing the petitioner's 2255

motion as untimely. ... Counsel's miscalculation was, and very simply should be, attributed to human error."

The lawyer's misconduct not only precluded a timely filing of the motion to set aside the sentence but also may well have been part of a pattern of incompetence because the lawyer was later reprimanded by the Florida Supreme Court for failing to supervise a paralegal in another case.

The government (as noted by the lawyer in his mea culpa) had asked the district judge to dismiss Lombardo's motion as untimely, and the judge complied—possibly because Lombardo's lawyer offered no reason for of the judge to deny the government's request and didn't even cite the applicable legal standard for forgiveness of a lawyer's error. Instead he cited *Pioneer*'s "excusable neglect" standard for forgiving a missed procedural deadline—the reference is to *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993)—rather than the "extraordinary circumstances" standard of *Holland v. Florida*, 560 U.S. 631 (2010), for equitable tolling of a statute of limitations.

Notice too the hint in the lawyer's explanation that he may have engaged in egregious professional misconduct by outsourcing a critical issue to a paralegal. The judge should have realized that this lawyer was not to be trusted; had he realized this the judge would not have accepted, without close questioning, the lawyer's feeble excuse of having made a "simple miscalculation." The simplicity of the miscalculation was not exculpatory, but condemnatory, of the lawyer's conduct. The judge should have investigated further before denying equitable tolling. Instead he remarked that "missing a deadline because that deadline has been miscalculated is not excusable neglect"—holding the paralegal's miscalcula-

tion against Lombardo, even though Lombardo had hired the lawyer, not the paralegal, to calculate the deadline and, sitting in prison, had no idea the lawyer would improperly hand his case over to the paralegal. It's true that in *Holland v. Florida, supra,* 560 U.S. at 651–52, the Supreme Court said "We have previously held that 'a garden variety claim of excusable neglect' … does not warrant equitable tolling"— but the question is whether Lombardo's claim is "garden variety."

The judge added that Lombardo should have "count[ed] to the tolling date himself along with his hired counsel." That was another unrealistic remark by the judge; it would never have occurred to Lombardo to "count to the tolling date himself"—he's doubtless never heard the term "tolling date." He trusted his lawyer to handle the case.

The judge refused to issue a certificate of appealability, without which Lombardo could not appeal from the denial of his section 2255 motion to set aside his sentence. A judge of this court, however, granted the certificate, bringing Lombardo's appeal from the denial of his motion before this court. We recruited new counsel to represent Lombardo in his appeal.

I am surprised and disappointed at the decision of the other two judges on this panel to affirm the district court's determination that Lombardo is not entitled to equitable tolling of the deadline. The government, echoing the district judge, argues that a defendant may not avail himself of equitable tolling of a statutory deadline unless some "extraordinary circumstance" stands in his way, and a "simple miscalculation that causes his attorney" to miss the deadline "is not extraordinary." That is misleading. It was an inexcusable

miscalculation either by Lombardo's lawyer or by the lawyer's "trusted" paralegal—a miscalculation that Lombardo would not have noticed or been able to correct. There is no suggestion that anyone told him "you'd better count the days yourself because your lawyer may screw up," or that without such a warning Lombardo could be expected to know or guess that he should do that. And while not every mistake by a lawyer is "extraordinary," this one was, if consequences are relevant, as they should be.

The government was relying, mistakenly in my view, on *Holland v. Florida*, *supra*, 560 U.S. at 651, where the Supreme Court had distinguished between "a simple 'miscalculation' that leads a lawyer to miss a filing deadline," which would not warrant equitable tolling (even if the defendant was challenging a death sentence on the ground that his trial counsel was ineffective, as in *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007)), and "more serious instances of attorney misconduct." The Court said in *Holland* that it had "previously made clear that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." 560 U.S. at 649. Noting that as in this case "the 'extraordinary circumstances' at issue involve[d] an attorney's failure to satisfy professional standards of care," *id.*, the Court rejected an approach that denies equitable tolling unless an attorney has engaged in specified types of misconduct, saying "the [Eleventh Circuit] held that, where that is so, even attorney conduct that is 'grossly negligent' can never warrant tolling absent 'bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part.' But in our view, [that] standard is too rigid. … [A]t least sometimes, professional

misconduct that fails to meet the Eleventh Circuit's standard could nonetheless amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling. … We have previously held that 'a garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline … does not warrant equitable tolling. But the case before us does not involve, and we are not considering, a 'garden variety claim' of attorney negligence. Rather, the facts of this case present far more serious instances of attorney misconduct." 560 U.S. at 649–52. The district judge should have suspected that Lombardo's counsel had engaged in professional misconduct and should have noticed a significant conflict between counsel's continued representation of Lombardo and his interest in protecting his own reputation—and law license. Cf. *Christeson v. Roper*, 135 S. Ct. 891, 894 (2015). He did not realize that this could have been one of the "more serious instances of attorney misconduct," which, as *Holland* teaches, may amount to an extraordinary circumstance.

There has been as yet no determination of whether the sentence imposed on Lombardo at the conclusion of the trial was unconstitutional or otherwise subject to collateral attack. Only if it was does 28 U.S.C. § 2255(a) entitle him to a new trial. But rather than affirming, in effect, the sentence on the basis of his lawyer's incompetence, we should remand the case to the district court with instructions to conduct an evidentiary hearing to evaluate his performance. For this is a close case, since we are told in *Holland v. Florida*, *supra*, 560 U.S. at 649–51, that "a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing. … But

we have … made clear that often the 'exercise of a court's equity powers ... must be made on a case-by-case basis.' In emphasizing the need for 'flexibility,' for avoiding 'mechanical rules,' we have followed a tradition in which courts of equity have sought to 'relieve hardships which, from time to time, arise from a hard and fast adherence' to more absolute legal rules, which, if strictly applied, threaten the 'evils of archaic rigidity.' The 'flexibility' inherent in 'equitable procedure' enables courts 'to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct ... particular injustices.' Taken together, these cases recognize that courts of equity can and do draw upon decisions made in other, similar cases for guidance. Such courts exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case."

I am aware that in the context of procedural default the Supreme Court has stated without qualification that a petitioner must "bear the risk of attorney error." *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991). But as explained in *Holland*, *supra*, 560 U.S. at 650, quoting 501 U.S. at 726, "*Coleman* was 'a case about federalism,' asking whether *federal* courts may excuse a petitioner's failure to comply with a *state court's* procedural rules, notwithstanding the state court's determination that its own rules had been violated. Equitable tolling, by contrast, asks whether federal courts may excuse a petitioner's failure to comply with *federal* timing rules, an inquiry that does not implicate a state court's interpretation of state law. Holland does not argue that his attorney's misconduct provides a substantive ground for relief. … This case asks how equity should be applied once the

statute is recognized. And given equity's resistance to rigid rules, we cannot read *Coleman* as requiring a *per se* approach in this context" (emphasis in original).

So we have in the present case unprofessional attorney conduct that may well rise to the level of the "egregious" and the "extraordinary"; but to know whether it does we need more facts—specifically we need to know why Lombardo's lawyer relied on a non-lawyer's calculation of the filing deadline. I suspect that his conduct was both "egregious" and "extraordinary," as it represented a complete abdication of his responsibility to represent Lombardo. I can't recall a case in my 35 years as a judge in which a lawyer made such an error—and with such adverse consequences for his client if we affirm. But we should let the district judge try to untangle the mess in the first instance.